JUAN BUENAVENTURA, PETRONA DE JESÚS, JUANA M. GABRIELA, JUAN CONCEPCIÓN, DOMINGO MARÍA y DOMINGO AQUILES QUIÑONES VEGA, demandantes y apelantes, *v.* SOUTH PORTO RICO SUGAR COMPANY OF P. R. y LA COMISIÓN INDUSTRIAL, demandadas y apeladas.

No. 6583.—*Sometido:* Marzo 14, 1935. *Resuelto:* Abril 10, 1935.

*R. Hernández Matos,* abogado de los apelantes; *F. Manuel Toro,* abogado de la apelada South Porto Rico Sugar Co. of P. R.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En este caso los demandantes, como hermanos y únicos herederos del obrero Jesús Quiñones Vega, solicitan de esta corte un decreto declaratorio, al amparo de la Ley No. 47 del año 1931 (pág. 379), basados en los hechos que se alegan en la demanda y que sustancialmente fueron declarados probados por la corte inferior.

Jesús Quiñones Vega, mientras trabajaba con la demandada, South Porto Rico Sugar Co., sufrió un accidente en junio de 1931. En agosto 17 del mismo año el patrono, con la conformidad del obrero, sometió a la consideración de la Comisión Industrial de Puerto Rico un proyecto de convenio por la suma de $438.49, cantidad que se fijó tomando como base una incapacidad de un 40 por ciento en las funciones del brazo izquierdo del obrero, de acuerdo con el dictamen producido por el médico del patrono. Recibió la Comisión el referido proyecto, y sin realizar acto alguno para aprobarlo o desaprobarlo, ordenó el examen del obrero por el médico de la Comisión, Dr. Guzmán Soto, quien estimó que

el referido obrero "había perdido un 40 por ciento én las funciones del brazo izquierdo, del hombro hacia abajo, que es la incapacidad estimada por la compañía aseguradora." La Comisión, que tenía en su poder el proyecto de convenio enviado por el patrono, acordó remitir a dicho patrono copia del informe médico, para que enviase un proyecto de convenio de acuerdo con la incapacidad establecida en el mismo. La South Porto Rico Sugar Co. recibió este acuerdo en enero 19 de 1932 y con fecha 29 del mismo mes se dirigió a la Comisión recordándole que en 17 de agosto de 1931 le había remitido un proyecto de convenio que firmó y aprobó el obrero Jesús Quiñones Vega, por la suma de $438.49, que acompañó en un cheque a favor del lesionado Jesús Quiñones Vega. Manifiesta el patrono que estando el proyecto de convenio sometido a la consideración de la Comisión sólo resta que ésta señale la cantidad de la indemnización y acepte o rechace el convenio sometido y que en caso de que sea menor cantidad se le devuelva el cheque para expedir uno nuevo por el montante exacto de la compensación. Cuando se escribió esta comunicación había ocurrido ya el fallecimiento de Jesús Quiñones Vega, que tuvo lugar en 21 de enero de 1932. Los demandantes, hermanos del finado, quien no dejó ascendientes ni descendientes, fueron declarados sus únicos herederos.

En 4 de febrero de 1932 M. León Parra, miembro de la Comisión, contestó al abogado del patrono manifestándole que el obrero había sufrido una pérdida permanente del 40 por ciento en la capacidad remunerativa del brazo izquierdo, desde el hombro hacia abajo, y que de acuerdo con su edad y su salario había que pagarle la cantidad de $470, o sea $31.51 más de la cantidad concedida por el patrono en su proyecto. El Sr. León Parra pide que se remita la diferencia para unirla al cheque de $438.49 que se encontraba ya en poder de la Comisión, enviado por el patrono.

Con fecha 28 de febrero del mismo año, el abogado Rafael Hernández Matos se dirigió a la Comisión Industrial

a nombre de los herederos, alegando su derecho a recibir la cantidad señalada por el Comisionado Manuel León Parra en febrero 4 de 1932. En 11 de mayo del mismo año la Comisión Industrial de Puerto Rico dictó la siguiente resolución:

"El obrero Jesús Quiñones Vega sufrió en el mes de junio de 1931, mientras trabajaba con el patrono *self-insurer* South P. R. Sugar Co. una lesión en su cuerpo por consecuencia de un accidente del trabajo, quedándole cierta incapacidad parcial permanente que su patrono fijó en la cantidad de $438.49, suma que fué remitida por éste a la Comisión Industrial en 17 de agosto de 1931 por medio de un *check*, sometiendo de acuerdo con la ley 85–1928 a la aprobación de esta Comisión un proyecto de convenio entre dicho patrono y el obrero por el que se fijaba aquella suma como compensación de la incapacidad que sufría dicho obrero por consecuencia de su lesión, convenio que no fué aprobado por la Comisión Industrial por entender ésta que tenía derecho el obrero a percibir $470.00 o sea $31.51 en adición al montante del *check* antes indicado.

"En este sentido se dirigió la Comisión Industrial al patrono requiriéndole para que remitiera esta diferencia, y mientras de una parte y otra se hacían observaciones que versaban alededor de este particular, el obrero del caso murió el 21 de enero de 1932, quedando como herederos de sus derechos y acciones varios hermanos quienes por conducto del abogado de Ponce Sr. Hernández Matos, pidieron se les hiciera entrega como tales herederos del *check* de referencia, a cuya petición se opuso el patrono, por entender que los derechos que contemplaba la Ley 85–1928 denominada 'Ley de Indemnizaciones por Accidentes del Trabajo' hacían referencia exclusivamente a los que corresponden a los beneficiarios de un obrero, esto es, a los de aquellas personas que dependían razonablemente para su vida a la hora de la muerte del obrero de lo que ganaba con su trabajo mientras vivió; y por ende que la jurisdicción de la Comisión Industrial no llegaba más allá, no extendiéndose por consiguiente hasta poder entender en aquellos procedimientos relativos a la trasmisión por herencia de la propiedad de una persona por causa de su muerte; jurisdicción que es exclusivamente de una Court of Probate que en Puerto Rico compete exclusivamente a las Cortes de Distrito. La comisión entiende que, planteada la cuestión en este terreno en la forma que lo ha sido por el patrono *self-insurer* South P. R. Sugar Co. of P. R. en verdad la jurisdicción propia para entender en el

presente caso, en el trámite en que actualmente se encuentra, corresponde sin duda alguna a una Corte de Distrito, y mientras recaiga la resolución que proceda de la Corte competente sobre el particular que nos ocupa ahora, la Comisión Industrial acuerda conservar en su poder el *check* antes referido de $438.49 librado a favor de Jesús Quiñones Vega para hacer entrega de él a quien disponga aquélla en su sentencia.''

El cheque de $438.49 fué devuelto más tarde al patrono por la Comisión.

Contra esta resolución de la Comisión Industrial fué que se inició la solicitud sobre decreto declaratorio. Los demandantes alegan que siendo la cantidad de $470 una suma líquida que pertenecía al obrero Jesús Quiñones Vega, y dada la incertidumbre e inseguridad que se advierte con respecto a la persona o personas a quienes pueda corresponder dicha suma, se hace necesario que se determine judicialmente si son los herederos del obrero los dueños legítimos de la referida cantidad o si la misma corresponde al patrono.

La corporación demandada alega como defensa especial que la compensación otorgada por la Comisión Industrial de Puerto Rico en el caso de Jesús Quiñones Vega lo fué con posterioridad a la muerte del referido obrero y que los demandantes en este caso no son beneficiarios dentro de los términos de la Ley No. 85 de 1928 (pág. 631), por la cual se rige la Comisión Industrial, ni tienen derecho en su carácter de herederos a recibir dicha cantidad.

La solicitud de los demandantes fué declarada sin lugar. Los apelantes alegan que la corte inferior erró al resolver que al fallecimiento del obrero Jesús Quiñones Vega éste no dejó ninguna propiedad ni ningún derecho en relación con la compensación, que sea trasmisible por herencia a sus hermanos los demandantes, porque ninguna compensación le había sido concedida al obrero antes de ocurrir su muerte. Se alega además que el tribunal *a quo* erró al resolver que la acción del referido obrero ante la Comisión Industrial de

Puerto Rico dejó de existir al ocurrir la muerte del mismo, de acuerdo con la antigua máxima "Actio personalis moritur cum persona."

Como cuestion de hecho la corte inferior establece la conclusión de que la Comisión Industrial de Puerto Rico en ningún momento aprobó el convenio de compensación celebrado entre el patrono y el obrero y que la carta de febrero 4 de 1932 suscrita por el Comisionado Manuel León Parra a la South Porto Rico Sugar Co. no es una resolución de la Comisión Industrial, la cual no ha dictado en ningún momento resolución alguna fijando la compensación que correspondía al obrero Jesús Quiñones Vega.

Copiamos a continuación la carta dirigida al abogado de la South Porto Rico Sugar Co., F. Manuel Toro, que según la corte inferior no constituye una resolución de la Comisión Industrial:

"He leído su moción fecha 29 de enero del año en curso en relación con el caso del epígrafe del patrono South P. R. Sugar Co. of P. R. en la que Ud. hace referencia a un proyecto de convenio entre la compañía y el obrero remitido a esta Comisión por dicha compañía en unión del *check* por la suma que fija ascendente a \$438.49 para que dicho proyecto fuera aprobado por esta Comisión Industrial.

"Se trata de la pérdida de un 40% de manera permanente en la capacidad remunerativa del brazo izquierdo del obrero desde el hombro hacia abajo. Éste tiene 37 años de edad y un *earning capacity* de 70¢ al día. Con estas premisas hay que pagarle a este obrero la suma de \$470.00 o sea \$31.51 más de la cantidad que Uds. conceden en su proyecto de convenio antes referido. Si le parece bien remitan esa diferencia la cual unida al *check* de Uds. antes aludido ya en poder de esta Comisión, se pagará al obrero.

"En espera de sus noticias, quedo suyo atto. amigo (fdo.) M. León Parra, Comisionado."

En 19 de junio de 1932 la Comisión Industrial, habiendo acordado aclarar, a petición del patrono, su resolución de 11 de mayo del mismo año en ciertos particulares, dijo, entre otras cosas, lo siguiente:

"En febrero 4 siguiente, de acuerdo con las premisas existentes

con respecto a este particular en los autos del presente caso, se resolvió que de acuerdo con esta incapacidad correspondía al obrero en cuestión percibir $470 en concepto de compensación, y con este motivo en la misma fecha se dirigió al abogado del patrono comunicación firmada por el Comisionado ponente, que en su parte pertinente dice así: . . ." (Se copia la carta del Sr. León Parra anteriormente transcrita.)

De lo expuesto se deduce que la Comisión fijó en $470 la compensación que correspondía al obrero, pero que esta decisión se dictó después del fallecimiento del mismo. La incapacidad fijada por el médico de la Comisión que coincidió con el médico de la compañía aseguradora, fué aceptada por dicha Comisión en 4 de enero de 1932, cuando acordó remitir el informe de su propio médico al patrono, para que éste enviase "un proyecto de convenio de acuerdo con la incapacidad establecida en el mismo."

No discrepan las partes en cuanto a los hechos que aparecen expuestos por la corte sentenciadora con claridad y precisión. La dificultad estriba en determinar si al ocurrir la muerte del obrero lesionado había éste adquirido o no un derecho que pudiese ser trasmisible a sus herederos. El derecho que pueda subsistir en favor de los herederos después de muerta una persona con derecho a compensación, bajo la ley de indemnizaciones a obreros, es una cuestión a discutir de acuerdo con las leyes de cada estado en particular. Puede decirse en términos generales que en la mayoría de los estados en que las cortes han considerado esta cuestión *the right to compensation not yet accrued* termina con la muerte del obrero lesionado o la persona que de él dependa y no pasa a los representantes personales de la herencia o a los herederos.

En *Sucn. Bachier* v. *Comisión de Indemnizaciones a Obreros,* 33 D.P.R. 1016, Jesús Bachier solicitó de la Comisión de Indemnizaciones a Obreros que se le indemnizara a causa de un accidente que sufriera mientras trabajaba en su carácter de obrero en cierta factoría. La solicitud fué de-

negada. Se estableció apelación para ante la corte de distrito, pero, durante la tramitación del recurso, falleció el demandante y a petición de sus herederos fueron éstos sustituídos por la persona de su causante para continuar el procedimiento. Luego la corte, *motu proprio,* desestimó la apelación declarando que el derecho del peticionario Jesús Bachier quedó extinguido con su muerte, sin que fuera dable a sus herederos revivir tal derecho a virtud de una sustitución de partes. Confirmando la sentencia de la corte inferior, esta corte se expresó en los siguientes términos:

"El artículo 3 de la Ley de Indemnizaciones a Obreros, tal como quedó enmendado por la Ley No. 61, aprobada en julio 14 de 1921 (p. 475), prescribe en los párrafos 1, 2, 3 y 4 el derecho de todo obrero que resulte lesionado a recibir cierta compensación según el carácter transitorio de la lesión o la incapacidad parcial o total para el trabajo y por el párrafo 5 se dispone que si el obrero perdiere la vida como resultado de las lesiones sufridas y ocurriere la muerte dentro de un año después del accidente, las personas o beneficiarios que enumera y quienes dependieran de modo razonable de lo que ganaba el obrero fallecido, tendrán derecho a la compensación que se determina en dicha ley.

"Primeramente el propósito de la ley fué proveer los medios de subsistencia al obrero que recibe lesiones en sustitución de los salarios que deja de percibir durante su incapacidad, ya temporal o permanente, como resultado de tales lesiones. Ésta es una acción personal que corresponde al obrero y cesa con su muerte. En relación con este derecho del obrero las autoridades discuten si lo que percibe el obrero durante su vida debe colacionarse al montante de la compensación que obtenga el beneficiario o dependientes a consecuencia de su muerte o si el obrero puede transar en vida de modo que sus beneficiarios queden impedidos de ejercitar su acción por su subsecuente fallecimiento. Las autoridades parecen unánimes en el sentido de que el obrero no puede transigir sobre el derecho futuro de sus beneficiarios por razón de su muerte, pero si bien estas cuestiones no tenemos que considerarlas en este recurso, todo demuestra y así se desprende claramente del artículo 3 y párrafos citados, que la ley establece dos acciones separadas e independientes sin interés recíproco entre las partes realmente interesadas, no surgiendo, por tanto, el derecho de los beneficiarios hasta el momento de la muerte del obrero y limitada

la acción por nuestro estatuto, si tal evento ocurre, dentro del año después del accidente.

"La ley de Massachusetts es bastante semejante a nuestro estatuto y la Corte Suprema de dicho estado, refiriéndose al punto suscitado en este caso, dice:

" 'Somos de opinión, sin embargo, que el derecho a una orden para pago en el futuro de esta compensación especial termina con la muerte de la persona lesionada. Es un derecho peculiar a dicha persona y no creado para beneficio de los que dependen de él. Es parte del sistema de compensación especial provisto en las secciones 9, 10 y 11 de la segunda parte de la ley. Por la sección 9 se dispuso una compensación especial por un período de incapacidad total para el trabajo; por la sección 10 se fijó la compensación por un período de incapacidad parcial; por la sección 11, tal como fué enmendada por la ley de 1913, se concede compensación adicional por la pérdida o incapacidad total o parcial de ciertas partes del cuerpo. Todas estas disposiciones parecen haberse establecido para la compensación personal del empleado lesionado, proveyéndose para los que de él dependen la compensación que se da por su fallecimiento. La compensación especial toma el lugar de los salarios que de no haber ocurrido la lesión el empleado hubiera ganado. Como indica la Junta de Accidentes Industriales en su resolución, nada hay en el texto de la ley que autorice que se ordenen los pagos especiales durante un tiempo después de la muerte del empleado, ni su fraseología ni su fin aparente requieren tal interpretación. Si esto no fuera así, las sumas que habrían de ser pagadas a los que dependen de él se aumentarían proporcionalmente a la rapidez con que su muerte ocurriera después de haber comenzado la incapacidad, a pesar de que el objeto evidente de estos pagos era resarcir las pérdidas por su incapacidad para ganar dinero. En nuestra opinión la decisión sosteniendo que esta compensación específica sólo debe concederse mientras vive el empleado lesionado, fué correcta.' In re Burns (218 Mass. 8), 105 N. E. 601."

Los diversos estatutos de cada estado han sido interpretados por los tribunales de acuerdo con sus peculiares disposiciones. Las decisiones son en realidad numerosas. En algunos puntos se manifiestan acordes y en otros en abierto conflicto. Este conflicto no surge siempre de los términos en que está redactada la ley, sino de la aplicación de un

criterio diferente a disposiciones legales prácticamente idénticas.

Las decisiones versan sobre la trasmisibilidad de los derechos de la persona lesionada después de su muerte, o de sus beneficiarios, también después de haber fallecido. La Corte Suprema de Massachusetts, en *Murphy's Case,* 224 Mass. 592, 113 N. E. 283, se expresa así:

"Sostener que la persona que dependía del obrero tiene un derecho adquirido (*vested right*) a compensación que pasa a un legatario mediante testamento y en caso de sucesión intestada se trasmite al pariente más cercano de dicha persona, sería imponer al asegurador una carga no justificada por el objetivo que la ley se propuso alcanzar. Además, la compensación concedida a esa persona iría en tal caso a personas ajenas a la clase que tuvo en mente el legislador. Así interpretado, el estatuto enriquecería o podría enriquecer a extraños en lugar de hacer justicia a la familia y al pariente más cercano del obrero muerto en el curso del trabajo en que estaba empleado. En Inglaterra y en Ohio prevalece un criterio contrario, pero aquellas decisiones se basaron en disposiciones de las leyes allí cuestionadas que no son iguales a las disposiciones de nuestra ley de indemnizaciones a obreros. . . . Por estas razones somos de opinión que aunque no hay disposición expresa a este efecto en la ley, los pagos semanales que se hacen a la persona beneficiada deben terminar cuando la misma muere."

Esta decisión aparece ratificada más tarde en *Bartoni's Case,* 225 Mass. 349, 114 N. E. 663, y en *Bott's Case,* 230 Mass. 152, 119 N. E. 755.

En *Cambridge Mfg. Co.* v. *Johnson,* 153 Atl. 283, se dice que cuando la Comisión o la corte en apelación ha concedido una compensación a la persona lesionada, aunque la decisión de la corte se dicte después de su muerte, el representante de la herencia tendrá derecho a cobrar aquella porción que el lesionado hubiera tenido derecho a percibir hasta el momento de su fallecimiento. Con respecto a aquella porción que la persona lesionada no tuvo derecho a percibir durante su vida, de acuerdo con la corte, ni el administrador de los

bienes ni ninguna otra persona tiene derecho a cobrarla después de su muerte.

En *Bry-Block Mercantile Co.* v. *Carson,* 288 S. W. 726, resuelto por la Corte Suprema de Tennessee, se sostiene que el derecho a una compensación *not yet accrued,* a la cual la persona que dependa del obrero tendría derecho, termina con su muerte y no pasa a sus representantes personales, o herederos. En este caso se afirma enfáticamente que si el obrero muere de causas naturales sus representantes no tienen reclamación contra el patrono y si la muerte resulta de lesiones recibidas en su trabajo, existen disposiciones especiales para proteger a los que dependan del empleado. Se arguye que sería imponer una carga adicional al patrono, no intentada por la ley, si se le requiriera a pagar salarios o compensaciones a los representantes de la herencia del obrero que falleció de muerte natural. Añade además la Corte de Tennessee que si el lesionado hubiese tenido un derecho adquirido al tiempo de su muerte para obtener compensación por ochenta y tres semanas adicionales, si se hubiese constituído una deuda a su favor, serían los representantes de la herencia los llamados a cobrarla. Se niega que existiese tal derecho adquirido y se dice que los salarios cesan con la muerte del obrero y que igualmente debe cesar la compensación concedida en su lugar.

En Inglaterra el derecho a la compensación que surge con motivo de la muerte del obrero pasa a los representantes de la herencia de un finado que dependía de dicho obrero. *Darlington* v. *Roscoe* (1907) 1 K. B. 219, 76 L. J. K. B. N. S. 371, 96 L. T. N. S. 179, 23 Times L. R. 167, 9 W. C. C. 1. Se ha decidido por la Casa de los Lores que cuando un beneficiario bajo las leyes de compensación de Inglaterra muere sin haber reclamado compensación, los representantes legales del mismo pueden solicitarla, sobre la base de que el derecho para hacer la reclamación quedó investido en el beneficiario al tiempo de morir el obrero y pasa a los repre-

sentantes legales del primero. *United Collieries* v. *Hendry* (1909) 101 L. T. 129; A. C. (8th L.) 383; 2 B. W. C. C. 308.

En *McRandall* v. *Canadian Cartage & Storage Co.* (1924) Rap. Jud. Quebec 62 S. C. 152, el tutor de un menor reclamó compensación por lesiones sufridas por el último, y habiendo muerto éste, se sostuvo que dicha acción podía ser continuada por sus herederos, quienes tenían los mismos derechos del empleado de acuerdo con la ley de indemnizaciones a obreros.

En *State ex rel. Munding* v. *Industrial Commission of Ohio,* 92 Ohio St. 434, 111 N. E. 299, la Corte Suprema de Ohio sostiene que la concesión de una compensación a la persona que dependía del obrero fallecido a causa del accidente constituye un derecho adquirido (*vested right*), cuando se dicta el fallo, de acuerdo con la ley de indemnizaciones a obreros de dicho estado. Se sostuvo en este caso que los representantes de la herencia, al ocurrir la muerte de dicha persona, tenían derecho al balance o diferencia de la cantidad que no hubiese sido satisfecha.

En el caso de *Haugse* v. *Sommers Bros. Mfg. Co.,* 51 A. L.R. 1438, 254 Pac. 212, el obrero perdió un ojo por enucleación en el curso de su empleo. La compañía aseguradora convino con el obrero lesionado en satisfacerle cierta cantidad. Este convenio fué aprobado por la Comisión Industrial. Murió el obrero después de haberse comenzado a cumplir el convenio. La compañía aseguradora solicitó entonces que se le relevara de continuar pagando la compensación. La Corte Suprema de Idaho, resolviendo esta cuestión, se expresó así:

"La compañía aseguradora arguye que el propósito de la ley de compensaciones a obreros es pagar al obrero solamente durante el período de su incapacidad para el trabajo y que al terminar esa incapacidad la compensación debe cesar. Es verdad que bajo los Estatutos Compilados, art. 6231, enmendado (Leyes 1921, capítulo 217, art. 3), se dispone que cuando la lesión causa la incapacidad total para el trabajo, 'el patrono, durante tal incapacidad . . . pagará al

empleado lesionado,' y que un lenguaje similar se usa en relación con las lesiones que causan incapacidad parcial. Estatutos Compilados, art. 6233, enmendado (Leyes 1921, capítulo 217, art. 4). También se dice en cada uno de dichos artículos que en ningún caso los pagos semanales continuarán después que la incapacidad cesa. Sin embargo, estos pagos no cubren la lesión sufrida por el obrero en este caso. Por el contrario, el artículo 6234 de los Estatutos Compilados, según fué enmendado (Leyes 1921, capítulo 217, art. 5), es aplicable a esta lesión determinada. Este artículo dispone lo siguiente: 'En el caso de las siguientes lesiones la compensación será 55% del cómputo general de los salarios semanales, pero no más de la compensación semanal dispuesta en el artículo 6231, en adición a toda otra compensación por los períodos estatuídos contra tales lesiones respectivamente, a saber: . . . Un ojo por enucleación, . . . 120 (Semanas.)'

"No hay nada en el artículo 6234 o en la ley que disponga la cesación de los pagos por la pérdida de un ojo por enucleación en caso de muerte de la persona lesionada. En virtud de la aprobación del convenio la Comisión rindió un laudo de $1920. El laudo, que está de acuerdo con el Estatuto, no tiene condición alguna y no se rindió para que dependiera de una continuación de la incapacidad o teniendo en cuenta que el obrero viviera durante el período del convenio. La compañía aseguradora no ha quedado relevada de su obligación por el hecho de la muerte de la persona lesionada."

En *Heiselt Constr. Co.* v. *Industrial Commission,* 197 Pac. 589, 15 A.L.R. 799, 802, el laudo se rindió después de muerto el obrero, quien no dejó persona alguna que dependiera de él, como ocurre en el caso ante nos. La Corte Suprema de Utah resolvió que el administrador de la herencia no tenía autoridad para reclamar, porque el derecho a la compensación cesó con la muerte del obrero y no era trasmisible. Refiriéndose al laudo de la Comisión dice la corte:

"En este caso no se rindió laudo alguno en favor de persona viviente, ni había persona alguna viviente a la cual pudiera aplicarse. El referido laudo no se rindió hasta diciembre 20, de 1920, o sea cerca de nueve meses después de haber muerto Murphy. Esta distinción puede que no merezca una seria consideración. El ponente no desea sugerir, a modo de argumento, que dicha distinción esté despojada de mérito. El punto, sin embargo, que se intenta establecer

es que si el derecho no se adquiere hasta que se rinde el laudo, entonces, en el presente caso no hubo derecho adquirido, porque no existía ninguna persona viviente que pudiese adquirirlo. Es muy difícil concebir que un derecho se trasmita a la herencia a menos que el derecho haya sido adquirido por alguna persona viviente.''

El Juez Gideon, quien emitió una opinión disidente, refiriéndose a este punto dijo:

''Para mí la fecha del laudo no tiene importancia. El derecho existió o no existió con anterioridad a la muerte del obrero. En este caso decididamente el obrero durante su vida tuvo derecho a demandar la compensación fijada por la ley. El laudo no crea el derecho. El laudo depende del derecho existente antes de su rendición. Es simplemente el acto de la comisión reconociendo un derecho que ya ha existido. Se sugiere en la opinión de la corte que difícilmente puede concebirse que el derecho pase a la herencia a menos que haya sido adquirido por alguna persona viviente. Si el derecho de algún modo dependiera del laudo la sugestión podría tener algún peso en el razonamiento de la corte. El derecho, sin embargo, no depende del laudo. El derecho fué creado por la ley, Yo he tratado de puntualizar que no hay nada en el estatuto derogatorio del derecho por razón de la muerte del obrero.''

En *Greenwood* v. *Luby*, 105 Conn. 398, 135 Atl. 578, 51 A.L.R. 1443, se sostuvo que la muerte del obrero lesionado antes de rendirse el laudo no impide que se dicte un laudo en favor del representante de la herencia por el montante devengado con motivo de su incapacidad con anterioridad a la muerte. Según la corte, aquella parte de la compensación devengada durante su vida que no ha sido pagada pasa a formar parte del caudal hereditario.

En *Morgannelli* v. *Derby*, 105 Conn. 545, 135 Atl. 911, el empleado murió después de iniciados los procedimientos para obtener compensación y antes de rendirse el laudo. La corte resolvió que el Comisionado actuó correctamente al sostener que toda la compensación originada y vencida durante la vida del empleado pertenecía al caudal hereditario.

En el caso de *City of Milwaukee* v. *Roth and Industrial*

*Commission,* 185 Wis. 307, 201 N. W. 251, la corte se expresó así:

"El laudo no fija el derecho, únicamente determina el montante de la compensación por la lesión. El derecho a la compensación está determinado por el estatuto; la fijación de su cuantía es simplemente un detalle administrativo."

Como hemos dicho, la mayoría de las autoridades se manifiesta en el sentido de que el derecho a la compensación *not yet accrued* termina con la muerte del obrero lesionado. Sin embargo, aquella porción de la compensación *already accrued* a la muerte del obrero constituye un derecho adquirido que puede ser reclamado por los herederos o los representantes de la herencia. Creemos, como la mayoría de los tribunales, que en Puerto Rico puede llegarse a esta conclusión. El propósito evidente de nuestra legislación es beneficiar en primer lugar al obrero que sufre las lesiones y en caso de muerte a las personas que de él dependen; pero esto no quiere decir que una vez adquirido un derecho por la persona directamente lesionada, este derecho, en un caso como el presente en que el obrero no dejó personas que dependieran de él, pueda ser reclamado por sus herederos, albacea o administrador de la herencia. Nuestra ley concede compensación al obrero directamente por su incapacidad parcial o permanente durante su vida, y, en casos de muerte, dentro de un año después de ocurrido el accidente, a las personas que se especifican en el artículo quinto de dicha ley, si dependían de modo razonable para su subsistencia de lo que ganaba el obrero lesionado. El obrero en este caso sufrió una pérdida de un 40 por ciento en la capacidad remunerativa del brazo izquierdo. La compensación se fijó teniendo en cuenta el carácter permanente de esta lesión, la edad del obrero y su capacidad para ganarse el sustento. La ley en vigor en Puerto Rico dispone en su artículo quinto que la indemnización será graduada en relación con el tipo de salario que ganaba el obrero, atendiendo a la capacidad para ganar del lesionado y probabilidades de vida del mismo,

y la importancia de la lesión sufrida. No hay dificultad alguna, a nuestro juicio, en fijar la compensación que debió recibir este obrero hasta el momento de su fallecimiento. De acuerdo con la ley, "la indemnización en dinero que correspondía al obrero o a sus herederos se podrá conceder en pagos parciales mensuales. Si la Comisión concediera la indemnización en un solo pago, ejercerá sus buenos oficios por medio de sugestiones razonables para que la suma concedida se invierta de una manera provechosa al bienestar del obrero o de sus beneficiarios." La indemnización en un solo pago no es posible cuando el laudo se dicta, como en el presente caso, después de muerto el obrero. No cabe conceder una indemnización para cubrir salarios que nunca han de devengarse puesto que la persona con derecho a recibirlos falleció antes de dictarse el fallo. Creemos, sin embargo, que la Comisión está autorizada para fijar la cantidad que correspondía al obrero lesionado en concepto de compensación hasta el momento de su muerte y que debe hacerlo así a requerimiento de los herederos.

*Opinamos que debe revocarse la sentencia apelada y dictarse otra en su lugar declarando que los herederos de Jesús Quiñones Vega tienen derecho a reclamar las cantidades que hubiese tenido derecho a percibir el referido obrero hasta el momento de su muerte.*