RAMÓN MONTANER, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada, y CÁNDIDA FUENTES VDA. DE CORTÉS, WILLIAM CORTÉS FUENTES y ELOÍSA CORTÉS SOTO, peticionarios ante la Comisión Industrial.

Núm. 217.—*Sometido:* Marzo 10, 1941. *Resuelto:* Marzo 18, 1941.

268

*Hon. Procurador General George A. Malcolm, E. de Aldrey, Procurador General Auxiliar y Víctor J. Vidal González,* abogado éste del Fondo del Seguro del Estado, abogados del recurrente; *Ramón A. Gadea Picó,* abogado de los peticionarios ante la Comisión.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El 15 de enero de 1937 el obrero Domingo Cortés sufrió un accidente del trabajo, a consecuencia del cual falleció el 31 del mismo mes. Previos los trámites legales, el 29 de septiembre de 1937 el Administrador del Fondo del Seguro del Estado declaró a Gregorio Cortés único beneficiario con dependencia parcial de su hijo, el obrero fenecido, adjudicándole una compensación ascendente a $1,395.87, a ser pagada a razón de $12 mensuales, con efecto retroactivo al mes subsiguiente a aquél en que falleció el obrero. Además de su padre, dependían también del obrero la hermana de éste, de doble vínculo, Eloísa Cortés Soto, su medio hermano William Cortés Colón, y su madrastra a la vez que madre de crianza, Cándida Colón Fuentes quien vivió con y cuidó del obrero desde que éste contaba diez años de edad. Gregorio Cortés era un anciano y sufría de hemorragias hemoptísicas que le impedían trabajar; su hijo William Cortés Colón, en la fecha en que murió el obrero, no había alcanzado la edad de quince años, y Eloísa, según se alega, siempre ha tenido

perturbadas sus facultades mentales, por lo que tanto Gregorio como su indicada familia se sostenían del salario del obrero, auxiliado con 50 ó 75 centavos semanales que recibía Gregorio de otros hijos.

Gregorio Cortés continuó recibiendo los $12 mensuales de compensación hasta su fallecimiento, acaecido el 28 de diciembre de 1939, quedando pendiente de pago por no estar vencido, el remanente de la compensación, o sea, una suma alrededor de $800, y dejando una deuda de $86.62 por concepto de medicinas y alimentos.

El 18 de enero de 1940, en vista del fallecimiento de Gregorio Cortés, su viuda y sus dos hijos antes mencionados solicitaron del Administrador del Fondo del Estado que la compensación que venía recibiendo Gregorio Cortés fuese transferida a la viuda para beneficio de todos los peticionarios, hasta que se agotase el remanente de dicha compensación, petición que fué negada por el administrador por comunicación de febrero primero de 1940, ratificada por resolución del 8 del mismo mes, en la que expone las razones por las cuales no procede, a su juicio, acceder a lo por ellos solicitado, a la vez que ordena la suspensión de los pagos mensuales y el reintegro del balance de la compensación al Fondo del Seguro del Estado.

Recurrieron los peticionarios a la Comisión Industrial, la que por mayoría revocó la resolución del administrador, ordenando: (1) que la deuda de $86.62 de que se ha hecho referencia deberá ser pagada por el Fondo del Seguro del Estado con cargo al remanente de la compensación concedida a Gregorio Cortés y que quedó sin pagar por motivo de su fallecimiento; (2) que el remanente de dicha compensación sea pagado por partes iguales a Cándida Cortés Fuentes, viuda del beneficiario y madre de crianza del obrero, y los hermanos de éste, William Cortés Colón y Eloísa Cortés Soto, a quienes declara la comisión herederos beneficiarios de Gregorio Cortés, debiendo justificarse previamente que Eloísa Cortés se halla incapacitada mentalmente, y limitán-

dose el derecho de William Cortés a la cantidad que le corresponde hasta haber cumplido quince años de edad, debiendo acrecer el sobrante de la parte de compensación de éste— si tal sobrante hubiere—a su madre Cándida Colón Fuentes, y de igual modo acrecerá a favor de dicha señora la parte correspondiente a Eloísa Colón, si no se justificare su incapacidad mental.

Solicitó reconsideración el Administrador del Fondo del Seguro del Estado y siéndole denegada, instó este procedimiento de revisión.

██ La cuestión a resolver en este recurso es la de si muerto el beneficiario de un obrero, la parte de la compensación no cobrada por él por no estar vencida en la fecha de su fallecimiento, pasa a los herederos dependientes del beneficiario, que a su vez lo eran también del obrero, o si dicha porción no cobrada revierte al Fondo del Seguro del Estado.

El precepto legal aplicable a la cuestión en controversia es aquella parte del apartado 5 del artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo (Leyes de 1935, pág. 253), que dice así:

"Si el obrero o empleado dejare una viuda, padres, hijos, legítimos o ilegítimos, o hijos póstumos, fueran éstos o no naturales o adoptivos, o nietos, cualquiera de los cuales dependiera total o parcialmente para su subsistencia de lo que ganaba el obrero o empleado fallecido al tiempo de su muerte, recibirán una compensación de mil (1,000) dólares a tres mil (3,000) dólares que se graduará en atención a la capacidad económica del obrero o empleado fallecido y sus probabilidades de vida, de acuerdo con las reglas que deberá preparar el Administrador del Fondo del Estado, las que tendrán fuerza de ley después de aprobadas por la Comisión Industrial y el Gobernador, y promulgadas de acuerdo con la ley. Dicha compensación se distribuirá entre los parientes mencionados atendiéndose a la condición, necesidades, grado de parentesco y dependencia de cada uno, según se decida por el administrador de acuerdo con los hechos.

"En defecto de las personas antes mencionadas, el padre o la madre de crianza, los hijos de crianza, o hermanos menores de quince

años, o cualquiera que sea su edad, si fueren judicialmente declarados incapacitados por la corte correspondiente, que dependieren total o parcialmente de lo que ganaba el obrero o empleado fallecido, recibirán una compensación de mil (1,000) a dos mil (2,000) dólares como máximum, y si fueren varias las personas con derecho a esta compensación, la misma se distribuirá entre ellas según lo disponga el administrador.

"La compensación concedida a los beneficiarios que resultaren con derecho a recibirla, se hará efectiva por pagos parciales mensuales, y en los casos en que el administrador así lo decida, se pagará la compensación en total y de una sola vez, sujeto a la aprobación de la Comisión Industrial por el voto unánime de sus miembros si de los hechos investigados por el administrador o la Comisión Industrial se probare que no hay peligro alguno de efectuar este pago y que la inversión ha de resultar provechosa al beneficiario y a los fines que persigue esta ley. En tales casos el administrador y la Comisión Industrial harán constar en su resolución el resultado de los hechos investigados, y las razones que tuvo para conceder el pago total y de una sola vez.

"Al volver a casarse la viuda o viudo los pagos parciales concedídosle para su beneficio cesarán por completo; y cesarán igualmente al morir cualquiera otro de los beneficiarios a quien se estuviere haciendo tales pagos parciales y en casos de menores cesarán igualmente tales pagos al llegar éstos a la edad de 18 años, a menos que estuvieran incapacitados para el trabajo."

Del transcrito precepto legal resulta que la ley divide en dos grupos las personas con derecho a recibir compensación por la muerte de un obrero, disponiendo que los del primer grupo excluyen a los del segundo, es decir, que sólo en defecto de los comprendidos en el primero, recibirán compensación los del segundo, y establece además que la compensación correspondiente al primer grupo fluctúa entre $1,000 y $3,000, mientras que los del segundo reciben no menos de $1,000 ni más de $2,000.

Incluye el primer grupo: la viuda, padres, hijos, legítimos o ilegítimos, o hijos póstumos, sean éstos o no naturales o adoptivos, o nietos, que dependieren total o parcialmente para su subsistencia de lo que ganaba el obrero o empleado al tiempo de su muerte.

Constituyen el segundo grupo, el padre o la madre de crianza, o hermanos menores de quince años de edad, *o cualquiera que sea su edad si fueren judicialmente declarados incapacitados* y dependieren, como los del primer grupo, del obrero fenecido.

En el presente caso, al fallecer el obrero, vivía su padre Gregorio Cortés, quien por estar incluído en el primer grupo, excluyó a la madre de crianza y hermanos del obrero, que la ley, como hemos visto, incluye en el segundo. Muerto Gregorio Cortés, ¿no corresponde entonces a los del segundo grupo—los peticionarios en este caso—continuar percibiendo la parte de la compensación no extinguida, o debe ésta, según alega el administrador, revertir al Fondo del Seguro del Estado? Parece haber confundido tanto al administrador como a la minoría de la Comisión Industrial, aquella parte de la ley transcrita que dice:

"Al volver a casarse la viuda o viudo, los pagos parciales concedídosle para su beneficio *cesarán por completo;* y cesarán igualmente al morir cualquiera otro de los beneficiarios a quien se estuviere haciendo tales pagos parciales y en casos de menores cesarán igualmente tales pagos al llegar éstos a la edad de 18 años, a menos que estuvieren incapacitados para el trabajo."

De este precepto legal infieren el administrador y la minoría de la Comisión Industrial que al morir Gregorio Cortés, los plazos no cobrados por no haber vencido en la fecha de su muerte, revierten al Fondo del Seguro del Estado.

Concedemos que la ley, en lo que a este particular respecta, no es tan clara como debió serlo; pero si para interpretarla recurrimos al espíritu que anima esta legislación de justicia social, fácilmente comprenderemos que no fué ni jamás pudo ser ése el propósito del legislador. Como se ha dicho reiteradamente, la compensación que se paga al obrero o a sus beneficiarios no es una limosna: es un derecho que la ley les reconoce cuando en el curso de su trabajo y como consecuencia del mismo, sufren lesiones o se inutilizan, o pierden la vida por accidentes que provengan de cualquier

acto o función inherente a su trabajo. Inspírase la ley no sólo en ese acto de justicia al obrero y a los que de él dependen, si que también en evitar que a la muerte del obrero puedan aquéllos quedar sin el necesario sustento, constituyendo así una carga para el Estado. Si bien.en Puerto Rico la compensación se paga por conducto del Fondo del Seguro del Estado, ésta se deriva de las primas que a dicho fondo contribuyen los patronos, quienes a su vez se benefician del trabajo del obrero. [2] Siendo como es la Ley de Compensaciones por Accidentes del Trabajo una ley de dependencia y no de herencia, como se ha resuelto repetidas veces, claro es que al concederse una compensación, efectiva mediante pagos parciales, aquellos plazos no satisfechos por no haber vencido al fallecimiento del beneficiario—no constituyendo el derecho a cobrarlos un derecho adquirido *(vested right)*—no pasan a los herederos del beneficiario como tampoco a los del obrero. *Quiñones* v. *South P.R. Sugar Co. of P.R.*, 48 D.P.R. 351; *American Rolling Mill Co.* v. *Earnhart* (Ohio App.), 186 N.W. 883 (Dic. 1932); *Barwin* v. *Independent School District* (S.D.), 248 N.W. 257 (Mayo 1933); 2 Schneider *Workmen's Compensation Law*, 2a. ed., 1292–1293.

En el presente caso los peticionarios, como herederos y dependientes de Gregorio Cortés, no tienen derecho a lo que solicitan; pero ellos a la vez eran dependientes del obrero al tiempo de su fallecimiento, incluídos en el segundo grupo con derecho a compensación. A este efecto se dice con toda propiedad en la resolución recurrida:

"De acuerdo, pues, con la realidad de los hechos, del trabajo de Domingo dependían para su subsistencia no sólo su padre Gregorio, sino también sus dos hermanos antes nombrados y la esposa de aquél, Sra. Cándida Colón de Cortés. Ésa es la realidad, según han de apreciarse los hechos tal como ocurren en la vida: si Gregorio Cortés estaba imposibilitado de trabajar, y en compañía de él vivían sus dos hijos William y Eloísa, y su esposa, y con ellos Domingo, quien entregaba al padre el producto de su trabajo, no hay duda que de ese producto se mantenían también sus hermanos y madrastra; aparte del deber legal y moral que tenía Domingo de mantenerlos, imposi-

bilitado como estaba el padre de poder trabajar para sustentarlos, por el estado precario de su salud.''

Conocido el espíritu de la ley, ¿puede racionalmente sostenerse que contempla una situación como la del presente caso, en que existiendo la suma de $800 proveniente de la compensación concedida con motivo de la muerte del obrero, deban su madre de crianza y hermanos—el último menor de quince años y la otra incapacitada—que de aquél dependían para su sustento, quedar sumidos en la indigencia, mientras esa suma va a engrosar el Fondo del Seguro del Estado? Indudablemente que no. Se arguye por el recurrente y por la minoría de la Comisión Industrial que no existe precepto legal que autorice el pago solicitado por los peticionarios, pero es lo cierto que tampoco existe precepto alguno que lo prohiba, y por el contrario, interpretando la ley con ánimo de llevar a efecto los altos fines que la inspiran, se comprenderá fácilmente que la conclusión a que llegó la mayoría de la Comisión Industrial, debe prevalecer.

En igual sentido se han interpretado preceptos similares de la ley de Massachusetts. En *In re Bartoni* (Mass.) 114 N.E. 663 (Dic. 1916), al obrero fenecido sobrevivieron su viuda y cinco hijos, los cuatro primeros mayores de 21 años y el último de catorce años. El hijo menor estaba comprendido, como en el presente caso la madre de crianza y hermanos del obrero, dentro de la definición de dependientes *(dependents)* contenida en el párrafo 5 de la sección 2 de la ley de aquel Estado, porque eran miembros de la familia del obrero a la vez que herederos presuntos *(next of kin)*. Por el párrafo 2, sección 7 (c) de aquella ley, hubiera existido la presunción concluyente de que el menor dependía totalmente de su padre, a no ser que por vivir su madre, quedó excluído por presumirse concluyentemente que era ella quien dependía de su esposo. Fallecida la viuda del obrero sin cobrar todos los plazos semanales que le habían sido concedidos—por no haber éstos vencidos a la fecha de su muerte—, el menor solicitó ser sustituído en el derecho a

recibir la compensación no vencida, y la corte resolvió, citando el caso *In re Murphy*, 224 Mass. 592, 113 N.E. 283, que el derecho a recibir los plazos semanales no vencidos no constituía un derecho adquirido *(a vested right)* a favor de la viuda, y que este derecho sólo existía durante la vida de ella, cesando con su muerte; que su administrador sólo podía percibir los plazos semanales que no hubieran sido satisfechos desde el día del accidente hasta la fecha del fallecimiento de ella, pero no obstante esto, al adjudicar los derechos del menor como hijo del obrero, refiriéndose al párrafo 3 de la sección 12 de aquella ley, dijo el tribunal:

"Además, esta sección es amplia en su propósito. Debe dársele una interpretación tan amplia como los fines que la inspiran. *Está de acuerdo con las disposiciones de la Ley de Compensaciones ordenar que al morir la viuda, el pago de la compensación semanal continúe haciéndose al hijo menor del empleado fenecido, dependiendo aquél de su padre para su sostenimiento a la fecha de su muerte.*"

Se revocó la resolución de la Junta de Accidentes Industriales (Industrial Accident Board) y se devolvió el caso a dicha junta para ulteriores procedimientos. El precepto legal que sirvió de base a la Corte Suprema de Massachusetts para esta decisión dice así:

"Cualquier pago semanal bajo esta ley puede ser revisado por la . . . Junta y al así revisarlo, puede en consonancia con la prueba y de acuerdo con las prescripciones de la ley, dictar cualquier orden que estimare conveniente."

Admitimos que en nuestra Ley de Compensaciones por Accidentes del Trabajo no existe un precepto similar al precedentemente transcrito; pero nuestra jurisprudencia ha llegado a la misma conclusión al sostener, de acuerdo con el consenso de los tribunales del Continente, que el derecho a plazos no vencidos no constituye un derecho adquirido *(vested right)*. No constituyéndolo, es evidente que el administrador o la Comisión Industrial en su caso, interpretando la ley en armonía con su evidente propósito, puede revisar los plazos no vencidos y dictar la misma resolución que bajo el

precepto anteriormente transcrito dictó el Tribunal Supremo de Massachusetts.

Véanse por vía de ilustración los casos de *Ex parte Todd Shipbuilding & Dry Docks Co.*, (Ala.) 103 So. 447; *California Casualty Indemnity Exchange* v. *Industrial Accident Commission et al.*, (Cal.) 295 P. 34; *McCarl* v. *Borough of Houston* (Pa.), 106 A. 104.

Parece oportuno que hagamos una digresión, transcribiendo aquí un párrafo de la resolución de la Comisión Industrial de Puerto Rico que debiera servir de norma al Administrador del Fondo del Seguro del Estado al establecer en el futuro los pagos parciales de una compensación. Dice así:

"Gregorio era un hombre enfermo, que padecía de hemoptisis, conociéndolo el Administrador del Fondo del Estado, pues aparece así de la investigación por él practicada cuando la muerte del hijo de éste, Domingo; y no obstante le fijó en concepto de pago de su compensación la suma de $12 mensuales, e insiste en ese montante a pesar de Gregorio haberle pedido por su escrito de junio 20 de 1939 que se lo aumentara a $30. Es obvio que un hombre enfermo seriamente como lo estaba Gregorio, había de tener gastos extraordinarios en medicinas y para alimentación, y era lo justo que a ellos hiciera frente en los últimos días de su vida, cuando eran más perentorias por demandarlo el estado agudo de su enfermedad, contando con los $800 ó $900 que aun le quedaban por cobrar de la compensación que se le había concedido."

Al disponer que la compensación se haga efectiva por pagos parciales mensuales, persigue la ley el saludable propósito de proteger al beneficiario, impidiendo que pueda malgastarla; pero una medida tan justa y razonable no debe aplicarse de tal modo que haga inútil la compensación, dividiéndola en pagos mensuales tan exiguos que no alcancen a cubrir las más perentorias necesidades del beneficiario, condenándolo al hambre y a la miseria a pesar de tener una cantidad de dinero en el Fondo del Seguro del Estado. No ya en el caso de autos, que por las circunstancias concurrentes es extraordinario, sino en cualquier otro en que una o

más personas dependan del beneficiario para su sustento, una mensualidad de $12 es a todas luces irrazonable.

En el informe oral, la representación del recurrente puso especial énfasis, como si ello fuera un impedimento a lo solicitado por los peticionarios, en el hecho de que los beneficiarios comprendidos en el segundo grupo reciben una compensación menor, como hemos visto, a la que se concede a los del primero. Aparte de que esa circunstancia no sería un obstáculo, puesto que podría reducirse el montante de la compensación dentro de los límites que determina la ley— siempre que en ningún caso la cantidad a recibir por los nuevos beneficiarios menos la ya recibida por los anteriores, exceda del máximo establecido para el primer grupo, ni exceda tampoco de la cantidad pendiente de pago en poder del Fondo del Seguro del Estado—en el caso de autos la cantidad de $1,395.87 concedida a Gregorio Cortés no alcanza a $2,000, que es el máximo que puede concederse a los beneficiarios del segundo grupo. Por consiguiente, no es necesario variar el montante de la compensación.

Por los términos en que está concebida la resolución recurrida, no podemos determinar con absoluta certeza si ella dispone que el remanente en poder del Fondo del Seguro del Estado deba pagarse en la proporción indicada de una sola vez. Si así fuere, es decir, si el propósito de la resolución fuese que la totalidad del remanente en poder del Fondo del Seguro del Estado deba pagarse de una sola vez, entonces debe entenderse dicha resolución modificada en el sentido de que deberá hacerse efectiva en pagos parciales mensuales razonables, a menos que el administrador decida lo contrario, sujeto desde luego a la aprobación de la Comisión Industrial por el voto unánime de sus miembros, conforme prescribe el apartado 5 del artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo.

*Hecha la precedente aclaración, procede confirmar la resolución recurrida que dictó la Comisión Industrial de Puerto Rico en 20 de diciembre de 1940.*