FRANCISCO CEPEDA CANALES, recurrente, *v.* COMISIÓN INDUS-TRIAL DE PUERTO RICO, demandada; CECILIA RIVAS, interventora.

Número 461.

*Sometido:* 2 de marzo de 1953. *Resuelto:* 30 de junio de 1954.

802

*Francisco Cepeda Canales, pro se; Gregorio Lacot Salgado* y *Enrique González Velázquez,* abogados de la interventora; *Aida Casañas O'Connor,* abogada del Fondo del Seguro del Estado, éste como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Luis Tamas Rivas perdió la vida accidentalmente mientras trabajaba para la Fajardo Sugar Co. Practicada por el Fondo del Estado la investigación de rigor, el Adminis-

trador resolvió que el accidente era compensable, otorgó la totalidad de la indemnización ascendente a $3,302 a Francisco Cepeda Canales, supuesto padre del occiso,[1] como único dependiente de éste, e hizo constar en su resolución que "En cumplimiento de lo dispuesto en el art. 3 de la Ley de Compensaciones por Accidentes del Trabajo . . . por la presente se requiere a don Francisco Cepeda Canales, para que destine el importe de la compensación en todo o en parte a la compra de una finca y/o vivienda, a la adquisición de un negocio lucrativo o a cualquiera otra inversión que resulte provechosa . . ." y que "mientras tanto se le pagará mensualmente con cargo a la compensación a los fines de su subsistencia y con efecto retroactivo al mes inmediatamente posterior a la fecha de la muerte del obrero, la cantidad de $50 mensuales . . ."

Cecilia Rivas, hermana uterina del obrero, no estuvo conforme y en su oportunidad apeló para ante la Comisión Industrial. Luego de una extensa vista, la Comisión resolvió que la única persona que dependía del interfecto al momento de su muerte lo era su citada hermana, y dictó resolución al efecto. Solicitó Cepeda Canales se reconsiderara esa resolución y al ser denegada su moción acudió ante nos con un recurso de revisión. Expedimos el auto y ahora insiste en que la Comisión erró (1) al admitir en evidencia deposiciones tomadas del expediente del Fondo del Seguro del Estado, sin brindarle a él la oportunidad de enfrentarse a los testigos en su contra, así como (2) al limitar la aplicación de los arts. 142 y 143 del Código Civil (ed. 1930) a los descendientes con exclusión de los ascendientes legítimos.

Durante la vista celebrada ante la Comisión la aquí interventora Cecilia Rivas presentó como testigos a Juan Enrique Rivas, Inés Fellicier y Dolores Canales. Ella misma también declaró. Al finalizar el desfile de esa prueba oral su abogado manifestó que deseaba desglosar del expediente

---

[1] Decimos supuesto padre porque de la prueba ofrecida se desprende que Cepeda Canales no era padre legítimo ni natural de Tamas Rivas, mas sí que había tenido relaciones con la madre de éste.

de la investigación practicada por el Fondo del Estado las declaraciones juradas tomadas por uno de los investigadores de éste y que una vez desglosadas ofrecía esas declaraciones en evidencia. El abogado del Fondo se opuso a ello tenaz y repetidamente, mas la Comisión, no obstante ello, admitió en evidencia las declaraciones así desglosadas. De su resolución consta que al aquilatar toda la prueba que tenía ante sí la Comisión consideró no sólo la oral ofrecida por la apelante Cecilia Rivas, sino también las declaraciones de Modesto Dávila Rivera, Gregorio Salgado Rodríguez y Francisco Cepeda, ofrecidas por el propio recurrente, y las aludidas declaraciones desglosadas. A virtud de la apreciación que hizo de toda esa prueba llegó a la conclusión, repetimos, de que la única dependiente del obrero fallecido lo era Cecilia Rivas.

La contención fundamental de Cepeda Canales es que al admitirse en evidencia las tantas veces mencionadas declaraciones, se le privó de su derecho a contrainterrogar a los deponentes, siendo el fallo dictado contrario al debido proceso de ley. Discrepamos del criterio así enunciado.

■■ En armonía con lo dispuesto por el art. 37 de la "Ley de Compensaciones por Accidentes del Trabajo" (Núm. 45 de 18 de abril de 1935, págs. 251, 321) : [2] "Los informes adquiridos en virtud de las disposiciones de esta Ley por la Comisión Industrial, por el Administrador del Fondo del Estado . . . serán considerados de carácter privado . . ." pero "Nada de lo contenido en este artículo se entenderá que prohibe la inspección por la parte interesada o por su abogado de los informes y demás documentos relacionados con su caso." Amparándose en el derecho así concedídole la apelante Cecilia Rivas solicitó de la Comisión que ordenara al Administrador del Fondo le permitiera inspeccionar el expediente de la investigación por él practicada en el caso. La Comisión muy acertadamente así lo decretó.

---

[2] La enmienda introducida a este artículo por la Ley núm. 185 de 2 de mayo de 1952 (págs. 385, 389) no alteró en forma alguna la parte citada del mismo.

Por otra parte, el art. 6 de la citada ley(³) contiene un *Disponiéndose* al efecto de "que los expedientes de investigación de casos de acuerdo con esta Ley, que se encuentren en poder del Administrador del Fondo del Estado, serán admisibles como evidencia por la Comisión Industrial." Ante precepto tan claro y terminante, al ofrecérsele las declaraciones que figuraban en el expediente del Fondo del Estado, debidamente desglosadas e identificadas, la Comisión no podía hacer otra cosa que admitirlas en evidencia. *Alemañy* v. *Comisión Industrial*, 63 D.P.R. 601; cf. *Negrón v. Corujo*, 67 D.P.R. 398, 401. Además, al resolver la cuestión que ante sí tenía, la Comisión no podía hacer caso omiso de ellas, sino que era su deber considerar, como consideró, las mismas. Si las declaraciones a que hemos hecho referencia habían sido tomadas por un investigador del Fondo del Estado y servido de base a este último para llegar a la conclusión de que la única persona que dependía del occiso lo era Francisco Cepeda Canales, la presunción tenía que ser que tales declaraciones resultaban adversas a la apelante Cecilia Rivas. No obstante, ella optó por ofrecerlas en evidencia en adición a la prueba testifical a que ya hemos hecho mención. Semejantes declaraciones, repetimos, eran claramente admisibles en evidencia. Si Cepeda Canales quería examinar con más amplitud a las personas a quienes esas declaraciones habían sido tomadas, fácil hubiera sido para él solicitar de la Comisión que citara a esas personas y que señalara otro día para oírlas. *Montaner* v. *Comisión*, 51 D.P.R. 460. No lo hizo así. Limitó su objeción a que las declaraciones no eran admisibles en evidencia, ya que él tenía derecho a contrainterrogar a esas personas, ofreciendo, además, la prueba oral de los testigos ya mencionados, incluyendo su propio testimonio. No vemos en verdad que la Comisión recurrida cometiera error de clase alguna al admitir en evidencia dichas declaraciones.

(³) Por la Ley núm. 405 de 11 de mayo de 1951 (pág. 1059) se enmendó este artículo, mas el Disponiéndose anterior sigue leyéndose en la forma arriba copiada.

 El segundo error señalado tampoco fué cometido. Los arts. 142 y 143 del Código Civil, ed. 1930, definen qué se entiende por alimentos y quiénes están obligados a dárselos recíprocamente. Esos artículos nada tienen que ver con el caso que nos ocupa, no sólo porque a tenor de lo taxativamente dispuesto por los arts. 149 y 150 del mismo cuerpo legal la obligación de suministrarlos cesa con la muerte del obligado o del alimentista, sino también debido al hecho de que la materia aquí envuelta se rige por una ley especial. En este caso se trata de la muerte accidental de un obrero cuyo patrono estaba asegurado con el Fondo del Seguro del Estado. Al caso le es aplicable la referida "Ley de Compensaciones por Accidentes del Trabajo."

Es innegable que ésa es una ley de dependencia. Así lo ha resuelto reiteradamente este Tribunal—véanse *Montaner v. Comisión Industrial*, 58 D.P.R. 267, 273; *Rodríguez v. Comisión Industrial*, 58 D.P.R. 111, 114; *De Jesús v. Osorio*, 65 D.P.R. 640, 643—. Véase también 58 Am. Jur., págs. 684, 685, secs. 161, 162.

Su art. 3, según fué enmendado por la ley núm. 284 de 15 de mayo de 1945, págs. 1037, 1049, lo demuestra de manera inequívoca. El contexto de éste reza, en lo esencial, así:

"*Compensación en Casos de Muerte*

"5.—*Si como resultado de las lesiones o enfermedad,* sufrida en las condiciones especificadas en el artículo 2 de esta Ley, *ocurriere la muerte del obrero o empleado* . . . sin que . . . dejare pariente alguno *que de él dependiera para su subsistencia,* . . . .

"Si el obrero o empleado dejare una viuda, padres, . . . *cualquiera de los cuales dependiera total o parcialmente para su subsistencia de lo que ganaba el obrero o empleado fallecido al tiempo de su muerte,* . . . . Dicha compensación se distribuirá entre los parientes mencionados atendiéndose a la condición, necesidades, grado de parentesco *y dependencia de cada uno,* . . . .

"En defecto de las personas antes mencionadas, el padre o la madre de crianza, los hijos de crianza, o *hermanos menores*

*de diez y ocho (18) años, . . . que dependieren total o parcial-*
*mente de lo que ganaba el obrero o empleado fallecido recibirán*
*una compensación . . . .*

"En defecto de las personas antes mencionadas, los herma-
nos de crianza menores de diez y ocho (18) años de edad, . . .
*que dependieran principalmente de lo que ganaba el obrero o*
*empleado fallecido,* recibirán una compensación . . . ." (Bas-
tardillas nuestras.)

La Ley de Compensaciones por Accidentes del Trabajo
es, además, una ley de carácter especial. Conforme dispone
el art. 12 del Código Civil "en las materias que se rijan por
leyes especiales, la deficiencia de éstas se suplirá por las dis-
posiciones de este Código." La ley especial por la cual se
rige este caso no contiene a este respecto deficiencia de clase
alguna. Ella dispone de manera taxativa quiénes recibirán
compensación en caso de que un obrero muera accidental-
mente. Al hacerlo siempre habla de personas que dependie-
ran del obrero o empleado fallecido para su subsistencia, o
que "dependiera total o parcialmente para su subsistencia
de lo que ganaba el obrero o empleado fallecido al tiempo de
su muerte," etc. La dependencia es una cuestión de hechos
a ser determinada por el juzgador—en Puerto Rico la Co-
misión Industrial en primera instancia—tomando en consi-
deración todas las circunstancias que concurren en cada caso
en particular. *Cruz* v. *Comisión,* 35 D.P.R. 1023, 1025;
Bradbury's *Workmen's Compensation,* 3ra. ed., pág. 747;
Schneider's *Workmen's Compensation,* ed. Permanente, vol.
9, pág. 19, sec. 1905; *Weisgerber* v. *Workmen's Compensa-*
*tion,* 292 N. W. 627, 128 A.L.R. 1482, 1488; 13 A.L.R. 686;
30 A.L.R. 1253. La obligación legal de dar alimentos no
es de por sí suficiente para establecer la dependencia. *In re*
*Konin,* 202 P.2d 239, 241; Campbell's *Workmen's Compensa-*
*tion,* vol. 1, pág. 777, sec. 878; Bradbury's, ob. cit., pág. 743.
El hecho de que de acuerdo con el art. 143, inciso 4, del Có-
digo Civil los padres y los hijos ilegítimos estén obligados
recíprocamente a darse alimentos, no debe crear, ni crea,
presunción alguna de dependencia.

■■ La dependencia de que habla la Ley de Compensaciones por Accidentes del Trabajo es una dependencia real, de presente, existente al momento mismo de la muerte del obrero. Schneider's, ob. cit., vol. 9, págs. 5 y 11, secs. 1901 y 1902. Si el presunto padre de Tamas Rivas no dependía realmente para su sustento diario de lo que ganaba su hijo, el mero hecho de que probada la paternidad ilegítima exista por ley la obligación de alimentarle, no crea presunción alguna de dependencia. La dependencia, repetimos, es una cuestión de hechos a ser determinada por el juzgador. Para demostrar que su presunto padre dependía para su subsistencia del obrero fallecido, no bastaba que el occiso le remitiera ocasionalmente pequeñas "compras."

En *Drouin* v. *Ellis C. Snodgrass Co.*, 23 A.2d 631, un tal Rosaire Drouin, quien se había casado en dos ocasiones, falleció como resultado de un accidente del trabajo, dejando al momento de su muerte a su viuda y a un hijo de crianza, con quienes vivía, así como a una hija del primer matrimonio. La madre de esta última murió de parto y siendo ella recién nacida pasó a vivir con sus abuelos paternos en Canadá. El obrero occiso enviaba a esta hija ocasionalmente pequeñas cantidades de dinero para su sustento y en una ocasión pagó todos sus gastos durante el año que ella estuvo recluída en un convento. A la muerte accidental de su padre se presentó una reclamación en favor de la menor. Al resolverla en su contra el Tribunal Supremo del Estado de Maine se expresó así:

"Tanto en los informes orales como en los alegatos se insiste, sin embargo, en que la obligación legal que tiene un padre de alimentar a su hijo menor de edad de por sí establece la dependencia estatutaria que da derecho al reclamante a percibir compensación. Esta contención es demasiado abarcadora. Cierto es que en esta jurisdicción un padre está obligado por ley a alimentar a su hijo menor de edad. Citas. Y que al dejar de hacerlo así el estatuto fija severas penalidades. Citas. No obstante, la palabra dependencia, tal cual se usa en la Ley de Compensaciones por Accidentes del Trabajo es algo distinto al

derecho a recibir alimentos o al deber de un padre de suministrarlos. *En ausencia de una autorización estatutaria expresa al efecto, generalmente se ha resuelto que una conclusión de dependencia no puede basarse exclusivamente en prueba de la relación de padre e hijo,* sino que debe existir alguna prueba de probabilidad y de expectativa razonables de que el padre cumplirá con su obligación y por ende, que tal obligación tendrá algún valor real y teórico." (Bastardillas nuestras.)

En esta jurisdicción tenemos dos casos en los cuales se ha resuelto la cuestión en forma adversa a la contención del recurrente. Ellos son *Vázquez* v. *Comisión,* 35 D.P.R. 1012 y *Cruz* v. *Comisión,* supra. En el primero el hijo del reclamante trabajaba como "volteador" de una finca. Mientras se encontraba desempeñando las funciones de su empleo se le escapó un tiro de la escopeta que portaba, cogiéndolo en el lado izquierdo. A consecuencia de ello falleció. Su padre entabló reclamación, alegando que dependía del obrero muerto. La prueba estableció que el hijo ganaba $15 al mes, que sostenía independientemente una querida y que la declaración del padre fué tan exagerada que la corte inferior estuvo justificada en no darle crédito. Concluyó este Tribunal que no tenía duda de que "no se probó que el padre demandante dependía razonablemente del hijo para su sostenimiento."

En el segundo de ellos—*Cruz* v. *Comisión*—el hijo del reclamante falleció a consecuencia de un accidente ocurrídole mientras trabajaba como carpintero. La Comisión, después de investigar el caso, desestimó la reclamación del padre reclamante fundada en que éste "no dependía en ninguna forma de lo que ganaba su hijo fallecido." En la opinión emitida por este Tribunal se dijo:

"De todos modos, aunque se aceptara que José Cruz le diera en alguna ocasión dinero a su padre, de ello no podríamos establecer la dependencia razonable de que habla la ley, pues no es bastante que Manuel Cruz meramente derivase algún provecho del salario de su hijo para llegar a esa conclusión . . . ."

■ El art. 11 de la ley tantas veces citada—núm. 45 de 1935—según fué enmendado por la núm. 121 de 2 de mayo de 1940, pág. 729, preceptúa que:

"Cualquiera parte interesada podrá presentar copias certificadas de una orden o decisión de la Comisión Industrial, de acuerdo con esta ley, contra la cual se haya radicado petición de revisión y haya recaído resolución de ésta, de la que podrá solicitarse revisión ante la Corte Suprema de Puerto Rico dentro del término de quince (15) días después de su notificación; *Disponiéndose, que dicha revisión solamente podrá concederse sobre cuestiones de derecho o apreciación de prueba cuando ésta sea de carácter pericial.*" (Bastardillas nuestras.)

Tomando en consideración la prueba aducídale, la Comisión decidió quién dependía de Tamas Rivas al momento de su muerte y a esa persona le adjudicó la totalidad de la compensación por su muerte. Su conclusión a este respecto está ampliamente sostenida por la prueba. Aunque algunos de los fundamentos expuestos por ella en su resolución pueden haber sido erróneos, esa conclusión es correcta y debe ser sostenida. Cf. *Sucn. Muñoz* v. *Cepeda*, 72 D.P.R. 593, 607.

*Debe confirmarse la resolución recurrida.*

---

Opinión disidente del JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ.

No puedo estar de acuerdo con la opinión del Tribunal. Paso a explicar las razones en que me fundo.

## I

El Tribunal sostiene que los arts. 142 y 143 del Código Civil(¹)—que establecen lo que se entiende por alimentos y

---

(¹) Dichos artículos disponen:

"Artículo 142.—Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia.

"Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad.

"Artículo 143.—Están obligados recíprocamente a darse alimentos, en toda la extensión que señala el artículo precedente:

"1.—Los cónyuges.

quiénes están obligados a dárselos recíprocamente—"nada tienen que ver con el caso que nos ocupa no sólo porque a tenor de lo taxativamente dispuesto por los arts. 149 y 150 del mismo cuerpo legal la obligación de suministrarlos cesa con la muerte del obligado o del alimentista, sino también debido al hecho de que la materia aquí envuelta se rige por una ley especial", pasando seguidamente a citar los casos de *Montaner* v. *Comisión Industrial,* 58 D.P.R. 267, 273; *Rodríguez* v. *Comisión Industrial,* 58 D.P.R. 111, 114 y *De Jesús* v. *Osorio,* 65 D.P.R. 640, 643, en los que hemos dicho que "ésta es una ley de dependencia y no de herencia."

Es cierto que la Ley de Compensaciones por Accidentes del Trabajo—núm. 45 de 18 de abril de 1935 ((1) pág. 251) —es una ley de dependencia y no de herencia. Pero ese hecho, cierto como es, no es contestación adecuada al segundo señalamiento de error, que aquí consideramos en primer término, ni sostiene la afirmación de que los arts. 142 y 143 del Código Civil nada tienen que ver con este caso. Veamos.

El derecho a los alimentos no es un derecho hereditario. La obligación de darlos y el derecho a reclamarlos son independientes de, y no se predican en las reglas que rigen, los derechos sucesorios. La obligación de dar alimentos—y el derecho a reclamarlos—termina precisamente con la muerte del obligado, y por lo tanto no dependen del derecho a heredar. En consecuencia, en este caso no está envuelto derecho hereditario alguno. Lo que sí está envuelto es el derecho a una

"2.—Los ascendientes y descendientes legítimos.

"3.—Los padres y los hijos legitimados y los descendientes legítimos, naturales e ilegítimos de éstos.

"4.—Los padres y los hijos ilegítimos y los descendientes legítimos naturales e ilegítimos de éstos.

"5.—El adoptante y el adoptado.

"Los hermanos deben también a sus hermanos legítimos, aunque solo sean uterinos o consanguíneos, los auxilios necesarios para la vida cuando por un defecto físico o moral o por cualquier otra causa que no sea imputable al alimentista, no puede éste procurarse su subsistencia. En estos auxilios están, en su caso, comprendidos los gastos indispensables para costear la instrucción elemental y la enseñanza de una profesión, arte u oficio."

compensación por dependencia originada en la obligación legal de suministrar alimentos, y la suficiencia de esa obligación para crear, bajo los hechos de este caso, un estado de dependencia suficiente para establecer el derecho a compensación de acuerdo con la Ley de Compensaciones por Accidentes del Trabajo. Dicha ley sitúa ese derecho en aquellas personas de los diferentes grupos o categorías en ella señaladas, que dependían total o parcialmente del obrero para su subsistencia a la fecha de su muerte, pero no define qué se entiende por dependencia.

Para ser dependiente *no es necesario* ser heredero. Tampoco *basta* ser heredero para ser dependiente. He ahí la explicación de la frase—que no es una frase mágica—"ésta es una ley de dependencia y no de herencia". En igual forma, no es necesario que exista la obligación legal de atender a la subsistencia de una persona para que surja el derecho de ésta a compensación, si de hecho existía un estado, total o parcial, de dependencia. Pero cuando la obligación legal de pasar alimentos existe, ésta, probada la necesidad de la persona con derecho a recibirlos, se convierte en uno de los indicios más fuertes del estado de dependencia. La mejor regla es aquélla que permite que dicho estado se base en una expectativa razonable de alimentos futuros, siempre que a la fecha de la muerte del obrero exista la obligación de darlos, en la cual descanse el beneficiario. 13 A.L.R. 698, 30 A.L.R. 1259.

De acuerdo con el punto de vista más liberal, no es esencial que se pruebe que se contribuía de hecho a la subsistencia de los padres a fin de que la dependencia de éstos pueda quedar establecida. La promesa del hijo, *o la implicación de las relaciones entre ellos*, pueden dar origen a una expectativa razonable de alimentos futuros, tan efectiva para establecer la dependencia como las contribuciones pasadas. 58 Am. Jur., sec. 180, pág. 696 *et seq.* Y si bien la obligación legal de dar alimentos puede no ser por sí sola suficiente para establecer un estado de dependencia, sirve para robus-

tecer una inferencia débil que surja de contribuciones pequeñas e irregulares, L.R.A. 1918 F 487, L.R.A. 1916 A 250, sin que el incumplimiento de esa obligación legal tenga el efecto de negar la dependencia de la persona con derecho a recibirlos. *Utah Fuel Co.* v. *Industrial Commission*, 15 P. 2d 297. Véase también anotación en 86 A.L.R. 858.

Hace más de una década y siete años—el 7 de agosto de 1936, para ser más precisos—que la Comisión Industrial, en una acertada opinión ([2]) de progresivo alcance social, resolvió que dos hijos menores de un obrero de nombre Ángel Montero Campos, a quienes éste no pasaba alimentos, dependían para su subsistencia del jornal que ganaba dicho obrero a la fecha de su muerte. ([3]) En consecuencia, les declaró sus beneficiarios, junto a otros dependientes—entre ellos otro hijo menor— a quienes el Administrador había adjudicado la totalidad de

([2]) *Ángel Montero Campos*, apelante, *v. Fondo del Seguro del Estado*, apelado, 1 D.C.I. 17.

([3]) El art. 3, entonces vigente, de la Ley núm. 45, citada en el texto, en su apartado "Compensación en Casos de Muerte", en lo pertinente al primero de los grupos de personas que podían tener derecho a compensación, disponía:

"5. Si como resultado de las lesiones o enfermedad, sufrida en las condiciones especificadas en el artículo 2 de esta Ley, ocurriere la muerte del obrero o empleado dentro de dos (2) años de ocurrido el accidente, y como consecuencia de éste, sin que el obrero o empleado dejare pariente alguno que de él dependiera para su subsistencia, el desembolso con motivo de esta muerte se limitará al pago de los gastos de funeral y tales gastos no serán mayores de la suma de cien (100) dólares, en adición a aquellos otros gastos de asistencia médica, hospitalización y medicinas en que se hubiere incurrido por orden del Administrador.

"Si el obrero o empleado dejare una viuda, padres, hijos, legítimos o ilegítimos, o hijos póstumos, fueran éstos o no naturales o adoptivos, o nietos, cualquiera de los cuales dependiera total o parcialmente para su subsistencia de lo que ganaba el obrero o empleado fallecido al tiempo de su muerte, recibirán una compensación de mil (1,000) dólares a tres mil (3,000) dólares que se graduará en atención a la capacidad económica del obrero o empleado fallecido y sus probabilidades de vida, de acuerdo con las reglas que deberá preparar el Administrador del Fondo del Estado, las que tendrán fuerza de ley después de aprobadas por la Comisión Industrial y el Gobernador, y promulgadas de acuerdo con la Ley. Dicha compensación se distribuirá entre los parientes mencionados atendiéndose a la condición, necesidades, grado de parentesco y dependencia de cada uno, según se decida por el Administrador de acuerdo con los hechos."

la compensación, y ordenó a éste que redistribuyera la misma y pagara a los apelantes—a quienes había excluído de los beneficios de la ley—la parte correspondiente de la compensación adjudicada. En las siguientes palabras se recoge el espíritu justiciero que inspiró dicha decisión:

"De acuerdo con estos arts. del Código Civil de Puerto Rico [142 y 143, ed. 1930] Ángel Montero Campos estaba obligado a alimentar a sus hijos legítimos, por lo cual la ley presume que sus hijos menores estaban dependiendo total o parcialmente para su subsistencia de lo que ganaba su padre hasta el día de su muerte. Si Ángel Montero Campos no cumplía con este deber y obligación como padre en violación, no sólo de un deber moral, sino de los arts. 142 y 143 del Código Civil de Puerto Rico, consideramos, a nuestro juicio, que sus dos hijos menores no son responsables de la acción de su padre hasta el extremo de perder el último derecho a recibir indemnización por la muerte de su padre."

La anterior opinión, emitida por la Comisión Industrial en el ejercicio de sus funciones cuasi judiciales y cuasi tutelares, como tribunal administrativo especializado encargado de esa parte de la administración de la entonces recién aprobada Ley de Compensaciones por Accidentes del Trabajo —que abolió el sistema competitivo (seguro opcional con el Estado, con compañías privadas de seguros o asociaciones mutuas o propio asegurador) establecido por la Ley núm. 85 de 14 de mayo de 1928, para convertir al Estado en asegurador exclusivo dentro de un nuevo sistema de compensaciones a obreros—marcó, por su interpretación liberal del nuevo estatuto en cuanto al concepto *dependencia*, un paso de avance en el establecimiento de una correcta doctrina jurídica basada en una innegable realidad social. El criterio liberal así expresado por la Comisión Industrial constituyó signo de superación sobre el criterio restrictivo manifestado anteriormente, cuando prevalecían otros sistemas, por este Tribunal, en los casos de *Vázquez* v. *Comisión de Indem.*, 35 D.P.R. 1012 y *Cruz* v. *Comisión de Indem.*, 35 D.P.R. 1023, ambos surgi-

dos bajo la Ley núm. 10 de 25 de febrero de 1918, según enmendada por la núm. 61 de 14 de julio de 1921. (⁴)

Varias veces (⁵) ha sido desde entonces enmendado el art. 3 de la Ley de Compensaciones por Accidentes del Trabajo —la núm. 45 de 18 de abril de 1935—bajo la cual se decidió por la Comisión Industrial el caso de Montero Campos, sin que sus disposiciones relativas al requisito de dependencia hayan sido alteradas.

La liberal—y casi contemporánea interpretación con su vigencia—que la Comisión Industrial dió en dicho caso a la nueva ley en cuanto a dicho requisito, era conocida, como es de suponer—y no fué rechazada—por las varias Asambleas Legislativas que subsiguientemente introdujeron enmiendas al propio art. 3 en extremos directamente relacionados con las compensaciones en casos de muerte. La propia Comisión recurrida, en su decisión en el caso de autos, deja en pie—correctamente, a mi juicio, véase *Schroeder* v. *Arthur Sales Co.*, 62 A.2d 751, *cf. Llewelyn* v. *Industrial Commission*, 202 P.2d 160—la doctrina del caso de Montero Campos, pero aplica en el presente, respecto a la dependencia del padre, una regla distinta a la seguida en aquél, cuando dice:

"El Adminitrador del Fondo del Estado en su alegato nos dice que fué la propia Comisión Industrial la que sentó la pauta respecto a la aplicación de los arts. 142 y 143 del Código Civil ante una situación análoga. Se refiere el Administrador al caso de Ángel Montero Campos, I D.C.I., pág. 17. Ello es cierto. Recordamos el caso perfectamente bien. Fué uno de los pri-

(⁴) La Ley núm. 10 citada en el texto requería que las personas en ella mencionadas dependieran "exclusivamente" para su subsistencia.

La enmienda de la Ley núm. 61 cambió ese requisito a que dependieran "de modo razonable."

La Ley núm. 85 de 14 de mayo de 1928 (pág. 631), derogatoria de la núm. 10 de 1918 (pág. 55), según enmendada, también requería que dependieran "de modo razonable".

(⁵) Por la Ley núm. 52 de 14 de mayo de 1942 ((1) pág. 503; por la núm. 284 de 15 de mayo de 1945 (pág. 1037); por la núm. 163 de 2 de mayo de 1950 (Leyes de 1949–50, pág. 445); por la núm. 455 de 14 de mayo de 1952 ((1) pág. 939) y por la núm. 115 de 1 de julio de 1953 (pág. 411).

meros casos resueltos bajo la vigencia de la presente ley. En aquel caso, sin embargo, no había intereses encontrados y la presunción era de padre a hijos, es decir, que en aquel caso se trataba de que el padre de los reclamantes era el que había muerto y los apelantes eran unos hijos menores de edad.

"En el presente caso es a la inversa. Aquí fué el hijo el que murió y además del padre reclamante, tenemos también a una hermana que reclama, pero que está comprendida dentro del segundo grupo de beneficiarios. Ella quedaría ipso facto excluída, si se probara que el beneficiario lo es don Francisco Cepeda, padre del occiso."(⁶)

El fundamento de la regla aquí aplicada por la Comisión es el que se atribuye a la frase, ya antes considerada, de que la Ley de Compensaciones por Accidentes del Trabajo "es una ley de dependencia y no de herencia", y que el Administrador adjudicó la compensación al padre a base exclusivamente de la obligación que a su hijo le imponían los arts. 142 y 143 del Código Civil, sin que se hubiera justificado la dependencia, como cuestión de hecho, por la prueba obtenida en su investigación.(⁷) Así se expresa la Comisión a ese respecto:

"Es bien sabido, que a pesar de la disposición contenida en el Código Civil, padres hay, e hijos también, que descuidan el cumplir con esa disposición que es, no solamente de índole legal, sí que también de un aspecto moral. Y ello es así, porque la humanidad es como es. Y se hace necesario, en ocasiones, acu-

---

(⁶) Si bien en el caso de Montero Campos, al reconocer la Comisión el derecho de los dos hijos legítimos menores de edad a compensación, no derrotó totalmente el derecho del hijo natural—ya que la ley permitía la concurrencia de ambos derechos—no podemos convenir con la Comisión en que "no había intereses encontrados", por cuanto al reconocerse el derecho de los dos menores allí apelantes se afectó—reduciéndose a una tercera parte—el derecho a compensación reconocido al hijo natural por el Administrador.

(⁷) La equivocada contención del abogado del Administrador del Fondo del Seguro del Estado ante la Comisión Industrial en el caso de Montero Campos—que la Comisión incluye textualmente en la resolución que aquí se revisa—no representa un criterio dogmático e inmutable de quien la hizo, ni puede aprisionar su criterio sobre el alcance jurídico de un precepto, en una *stasis* intelectual perpetua, ante leyes de alcance social reparador y normas realistas de interpretación estatutaria.

dir a los Tribunales de Justicia para obligar a aquellas personas que están obligadas a proveer alimentos, a que lo hagan. Esto nos lleva necesariamente a la conclusión, de que no en todos los casos *se podría presumir con visos de seguridad, que tal disposición, como la contenida en nuestro Código Civil, se cumple al pie de la letra.* Y es por eso que se hace necesario el presentar prueba para determinar, si como cuestión de hecho, el hijo en este caso, ayudaba a su padre." (Bastardillas nuestras.)

*Dependiente*, en una interpretación liberal de la ley, no es, no puede ser, tan sólo aquél que recibe regularmente una contribución fija de quien trabaja. Es también aquél que, como Cepeda Canales, en su indigencia y su inutilidad física, está a la expectativa de la pequeña ayuda que su hijo pueda darle, porque, fuera de él, no tiene a quién volver los ojos. Es, para decirlo mejor, aquél que, casi una carga particular, está a sólo unos pasos de convertirse en una carga pública. Y no debe olvidarse que si bien la pobreza extrema y la miseria no son requisitos previos para la dependencia, *United States Fidelity & Guaranty Co.* v. *Britton*, 188 F.2d 674, cuando de hecho—como aquí—existen, junto a la obligación legal del hijo a dar alimentos y sus irregulares y pequeñas contribuciones al padre, completan el cuadro del estado real de dependencia.

En la interpretación de las leyes debe tenerse presente que "Una palabra no es un cristal, transparente e inmutable; es el ropaje de un pensamiento vivo y puede variar extensamente en color y contenido de acuerdo con las circunstancias y la época en que se use." El Juez Holmes en *Towne* v. *Eisner*, 245 U. S. 418, 425, 62 L.ed. 372, 376; *Cordero, Auditor* v. *Tribl. de Distrito*, 72 D.P.R. 378, 388. Atarse, como si fueran palabras mágicas, a la frase de que la Ley de Compensaciones por Accidentes del Trabajo "es una ley de dependencia y no de herencia", es perder de vista el origen y propósito de estos estatutos y su función reemplazando acciones ordinarias basadas en culpa o negligencia.

Aunque no se trata aquí de una reclamación de daños y perjuicios, conviene apuntar la norma señalada en *Travieso*

v. *Del Toro,* 74 D.P.R. 1009, respecto al derecho de un padre a daños por la privación de alimentos:

"La fuente original de una reclamación de daños y perjuicios por la muerte de una persona es el artículo 1802 de nuestro Código Civil, y no la regla 17(k) ni el artículo 61 del Código de Enjuiciamiento Civil. *Orta* v. *P. R. Railway L. & P. Co.,* 36 D.P.R. 743. Para que un reclamante pueda tener una causa de acción válida en tal concepto, no es necesario que él sea técnicamente un heredero, siendo suficiente el que él sea padre de la víctima, (Sentencia del Tribunal Supremo de España de 20 de diciembre de 1930) y que él sufra daños y perjuicios en virtud de su condición y relación de padre, considerando la destrucción de su derecho real o potencial a alimentos y la paralización permanente de los beneficios prospectivos que él podía haber recibido de su hijo. *Cf. Ruberté* v. *American R. R. Co.,* 52 D.P.R. 471; *López* v. *Rexach,* 58 D.P.R. 143; *Díaz* v. *Autoridad Fuentes Fluviales,* 71 D.P.R. 931."

Nuestra Ley de Compensaciones por Accidentes del Trabajo que, siguiendo el alcance y filosofía de ese tipo de legislación, estableció, de un lado, el derecho a una compensación sin tener en cuenta la culpa o negligencia del patrono, y de otro, abolió el derecho individual del obrero—y sus beneficiarios en casos de muerte—a una acción por daños y perjuicios contra los patronos asegurados, *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 61 L.ed. 685; *New York C. R. Co.* v. *White,* 243 U. S. 188, 61 L.ed. 667; *Cudahy Packing Co.* v. *Parramore,* 263 U. S. 418, 68 L.ed 366, 30 A.L.R. 532; *Rivera* v. *Comisión Industrial,* 67 D.P.R. 561; *De Jesús* v. *Osorio,* supra; *E. H. Noel Coal Co.* v. *Grilc,* 221 S.W.2d 49, debe ser liberalmente interpretada para lograr los fines perseguidos por el legislador. *Montaner* v. *Comisión Industrial,* 54 D.P.R. 722; *Correa* v. *Comisión Industrial,* 56 D.P.R. 816; *Cordero* v. *Comisión Industrial,* 60 D.P.R. 873, *Cordero* v. *Comisión Industrial,* 61 D.P.R. 361; *Atiles* v. *Comisión Industrial,* 69 D.P.R. 630. Véase Horowitz, *Current Trends in Workmen's Compensation,* pág. 470. La opinión del Tribunal significa que si no hubiera existido Cecilia Rivas, Cepeda Canales no hubiera tenido derecho a compensación alguna.

Bajo las circunstancias que he apuntado anteriormente, él tenía derecho a ella, y no debe pesar en nuestro ánimo el hecho, presente en este caso, de que Cecilia Rivas también dependía del obrero occiso, y que, dependiendo el padre, por ley estaba ella excluída de compensación alguna.

Hay que dar sentido humano a la ley. Los lazos de la sangre crean deberes ineludibles de conciencia y de espíritu, que el legislador ha reconocido consagrándolos como obligaciones legales. Un padre nunca deja de ser padre. Las palabras del Juez Douglas en su opinión disidente en *Baumet* v. *United States*, 344 U. S. 82, 97 L.ed. 111, expresan con magistral elocuencia la infinita grandeza al fondo de la relación filial: "Ninguna ley, ningún diccionario, ningún juego de palabras, puede cambiar ese hecho biológico. El padre, al igual que la madre, sigue siendo padre no importa cuán distanciados padre e hijo puedan estar. Un extraño puede, por sus actos, convertirse en padre de crianza; pero ninguna conducta puede convertir a un padre en un extraño."

Existiendo aquí la obligación legal del hijo hacia su padre —un anciano paralítico, de 70 años de edad— y establecida por esa propia condición de escombro humano su necesidad a los alimentos, así como por la deficiente investigación del Fondo la existencia de pequeñas e irregulares contribuciones del hijo, la declaración de dependencia a su favor por el Administrador estuvo justificada. Y si, en adición, se considera la prueba que a esos efectos tuvo ante sí la Comisión Industrial, ofrecida el día de la vista, no podemos menos que afirmar que es evidente el error de la Comisión recurrida al privar al padre del obrero occiso de su compensación, para dársela a una hermana uterina del mismo, a quien éste no tenía la obligación legal de dar alimentos por no concurrir en ella, según los autos, las circunstancias exigidas por el art. 143 para que surgiera aquélla, y cuya dependencia, aún siendo real, no podía derrotar el derecho del padre a la compensación, derecho superior y preferente por disposición expresa de la ley.

## II

Es mi criterio también que en la vista celebrada ante la Comisión Industrial se privó al recurrente, en su perjuicio, de ·derechos sustanciales, lo que hace imperativa la revocación de la resolución recurrida.

Está definitivamente reconocido que en procedimientos ante organismos administrativos como la Comisión Industrial, donde la adjudicación de hechos es definitiva, el derecho a contrainterrogar forma parte del debido proceso de ley. Parker, *Administrative Law* (1952) pág. 56. Véase también *Reilly* v. *Pinkus*, 338 U. S. 269; *Meunier's Case*, 319 Mass. 421, 66 N.E.2d 198. Declaraciones juradas o testimonios escritos, tomados sin la intervención de la parte contra quien se pretenden presentar, no son admisibles en evidencia en procedimientos ante dichos organismos, ya que admitirlos sería privar a esa parte de la oportunidad de contrainterrogar. Véase *In the Matter of Blumberg*, Park and Fisher, *Admin. Law*, 45d 811–7 (O.P.A., 1944); *Bereda Mfg. Co.* v. *Industrial Board of Ill.*, 114 N.E. 275. El derecho a contrainterrogar es parte sustancial de lo que se considera un juicio justo y se estima que este principio no puede vulnerarse indirectamente a través de presentación de testimonios escritos en lugar del testimonio personal del declarante. Cooper, *Administrative Agencies and the Courts* (1951) pág. 171 et seq. Véase *Bereda Mfg. Co.* v. *Industrial Board of Ill.*, supra. Cf. *Morgan* v. *United States*, 304 U. S. 1, 82 L.ed. 1129; *Ohio Bell Telephone Co.* v. *Public Utility Comm. of Ohio*, 301 U. S. 292, 81 L.ed. 1093. Si la declaración tiene importancia y peso en la disposición o adjudicación del asunto, el no permitir el contrainterrogatorio puede equivaler a la negación de un juicio justo. Cooper, ob. cit., pág. 184. La Comisión Industrial es un tribunal administrativo al que se han conferido funciones cuasijudiciales. Aun cuando los procedimientos ante ella no están sujetos a reglas técnicas de evidencia, sus determinaciones, en cuanto a derechos sustanciales de las partes, deben estar basadas en evidencia com-

petente; y si bien la admisión de evidencia de referencia que no sea de carácter fundamental no siempre conlleva en sí una revocación, véase *NLRB* v. *Ed. Friedrich, Inc.*, 116 F.2d 888; *Co. Mexicana de Gas S.A.* v. *Federal Power Commission*, 167 F.2d 804, dicha evidencia no puede constituir la base de la determinación. *Borgia* v. *Board of Review, Etc.*, (N.J. App. 1952) 91 A.2d 441. La *vista* a celebrarse ante la Comisión como organismo *cuasijudicial* tiene su connotación en la tradición de los procedimientos judiciales: un juicio justo, la admisión y peso de la evidencia por el juzgador de los hechos, y la resolución de la controversia, sin tomar en consideración extremos que, en el ámbito de la acción puramente ejecutiva, no serían objetables. *Borgia* v. *Board of Review, Etc.*, supra.

La opinión del Tribunal pone énfasis en là disposición contenida en el art. 6 de la Ley de Compensaciones del Trabajo al efecto de que "los expedientes de investigaciones de casos . . . serán admisibles en evidencia por la Comisión Industrial," y en los casos de *Montaner* v. *Comisión*, 51 D.P.R. 460 y *Alemañy* v. *Comisión Industrial*, 63 D.P.R. 601. (El caso de *Negrón* v. *Corujo*, 67 D.P.R. 398, se cita con *cf.*) Ninguno de estos casos milita en contra del punto de vista que sostengo. Para mí, la significación del precepto a que arriba he hecho referencia es la siguiente:

(1) En aquellos casos en que la contienda ante la Comisión Industrial se trabe entre el obrero o sus beneficiarios y el Administrador del Fondo, o entre el patrono y el Administrador, los expedientes de las investigaciones llevadas a cabo por el propio Administrador pueden ser admitidas en evidencia por la Comisión Industrial. El Administrador, a través de sus investigadores, ha tenido la oportunidad de interrogar a las personas con cuyas declaraciones forma el expediente de la investigación. En virtud de esa prueba él forma su juicio administrativo y hace su dècisión. No se trata de un juicio o vista, sino meramente de una investigación *ex*

*parte.* En consecuencia, los expedientes podrán ser admitidos en evidencia cuando sean ofrecidos por la parte en contienda con el Administrador, pero no por éste contra dicha parte, ya que se privaría a ésta de la oportunidad del contrainterrogatorio. Sin embargo, como los expedientes de investigación contienen, además de las declaraciones, otros documentos obtenidos por el Administrador en el curso ordinario de sus funciones, éstos sí pueden ser admitidos en evidencia al ofrecerlos el Administrador.

(2) Cuando la contienda se traba ante la Comisión, como en el caso de autos, entre dos partes que son las realmente interesadas, ninguna de las cuales es el Fondo del Seguro del Estado, y ninguna de las cuales intervino en la investigación, el art. 6 no autoriza la admisión de las declaraciones en contra de aquella parte a quien puedan perjudicar, si no se acompañan de la oportunidad del contrainterrogatorio. Es regla establecida que los derechos y las reclamaciones opuestas, de diferentes beneficiarios entre sí, se consideran individuales e independientes de los derechos del asegurador. *Weisgerber* v. *Workman's Compensation Bureau*, 292 N.W. 627, 128 A.L.R. 1482. Por lo tanto, habiendo el Administrador declarado compensable el caso y adjudicado la compensación al padre, la apelación de Cecilia Rivas contra esa decisión no llevaba otro propósito que el de impugnar, ni podía tener otra consecuencia jurídica que la de derrotar, el derecho reconocido al padre por el Administrador. Nunca podía variar la naturaleza compensable del accidente. La controversia, pues, era entre Cecilia Rivas y Cepeda Canales. El Administrador no era parte en el procedimiento. *Montaner* v. *Comisión Industrial*, 50 D.P.R. 700. La posición del Fondo la fijó su abogado diciendo "Al Fondo del Estado le es indiferente que sea una u otra persona" el beneficiario. Cepeda era la única parte que podía resultar adversamente afectada por una revocación de la decisión del Administrador. Por lo tanto, eran los derechos de Cepeda Canales, ya reconocidos administrativamente al serle adjudicada la compensación, los

que podían resultar afectados, no los intereses del Fondo del Seguro del Estado.

La innecesaria vehemencia—e indebida resistencia—con que los abogados del Administrador en repetidas ocasiones equivocadamente sostuvieron que a pesar de haberlo ordenado la Comisión el Administrador no venía obligado a permitir la inspección del expediente de la investigación practicada en el caso—véase art. 37 de la Ley—indudablemente que indujo a error al recto y competente Comisionado que presidía la vista, quien evidentemente consideró al Administrador como parte interesada en el procedimiento, manifestando en repetidas ocasiones "Aquí el Fondo del Estado es una parte especialísima", al mismo tiempo que los abogados del Administrador, sin tener la representación legal, ni autoridad para asumirla, se convertían en abogados de Cepeda Canales. Fueron, sin duda, las prolongadas y exasperantes discusiones de los abogados del Fondo con el paciente Comisionado las que llevaron a éste a olvidar, en el ejercicio de su función cuasi·judicial, la preeminente función cuasitutelar encomendádale por el estatuto, en virtud de la cual no sólo Cecilia Rivas era acreedora al amparo de sus derechos sustantivos y procesales, si que también Cepeda Canales, con el mismo o mejor derecho. Así se expresó el Comisionado: ". . . se trata de testigos, que podríamos decir, son testigos del Fondo del Estado, porque el Fondo del Estado los utilizó al tomarle las declaraciones para dictar la decisión que dictara en este caso. *Mal podría entenderse que el Fondo del Estado tuviera ahora que contrainterrogar a esas personas, ya que el arma del contrainterrogatorio es para la parte contraria* y no para la parte que utiliza al testigo en el examen directo." (Bastardillas nuestras.) Y más adelante dice: "La situación sería distinta. No sería lo mismo. En ese caso, si esas declaraciones juradas fueron tomadas por el Fondo del Estado, y figuran en su expediente, *la otra parte no tuvo ninguna oportunidad de examinar esos testigos, y menos de contrainterrogarlos.*" (Bastardillas nuestras.) Indudablemente que es-

tas palabras le fueron igual, pero indebidamente aplicadas a Cepeda Canales, quien no examinó, no contrainterrogó a los testigos en la investigación del Fondo.

El Administrador no podía, a través de sus abogados, asumir la representación, ni éstos podían obligar, con su conducta o gestión profesional, a Cepeda. Era el derecho de éste y no el del Fondo el que estaba en juego ante la Comisión. Nada hay en el récord que indique que ésta, en el ejercicio de su función cuasitutelar, ofreciera a Cepeda, quien no tenía representación profesional propia, oportunidad de interrogar personalmente a los testigos que declararon ante ella, o a aquéllos que habían declarado en la investigación del Administrador.

El propósito de las declaraciones ofrecidas en evidencia, según manifestó el abogado de Cecilia Rivas, fué el de establecer "la no dependencia" de Cepeda. En esa forma y para esos fines esas declaraciones no eran admisibles y no podían perjudicar a Cepeda. Éste tenía derecho a contrainterrogar a los declarantes, derecho del que fué privado.

Alterar, desventajosamente para Cepeda, su derecho a la compensación ya administrativamente reconocídale, mediante la admisión de declaraciones *ex parte* y sin darle la oportunidad de contrainterrogar, es llevar muy lejos la doctrina sobre la informalidad de los procedimientos en los organismos administrativos, sobre todo, cuando se ejercen aquí funciones cuasijudiciales y las determinaciones sobre los hechos no son revisables por este Tribunal. Habiéndose privado a Cepeda de su oportunidad de contrainterrogar, su derecho a obtener la eliminación de las declaraciones admitidas—y la obligación de la Comisión de ordenarla en el ejercicio de su función cuasitutelar—era evidente. Morgan, *Hearsay Dangers and the Application of the Hearsay Concept*, 62 Harv.L.Rev. 177, 184 *et seq.* No haberlo hecho constituyó error.

La implicación natural de la disposición de ley que establece que "los expedientes de investigación de casos . . . serán admisibles en evidencia por la Comisión Industrial" es necesa-

riamente la de que tales expedientes son admisibles en tanto las declaraciones *ex parte* que contengan no tiendan a perjudicar a un tercero que no es la parte que las tomó, sobre todo cuando esa parte resulta adversamente afectada en sus derechos sustanciales, a menos que se ofrezca a ésta la oportunidad efectiva del contrainterrogatorio. No dar ese alcance a esa disposición del estatuto es cerrar los ojos a la función real del derecho, es "aprisionar nuestra lectura de él en la concha de las meras palabras, es cometer el pecado cardinal en interpretación estatutaria: mera literalidad." *Pope* v. *Atlantic Coastline Railroad Co.*, 345 U. S. 379, 392, 97 L. ed. 1094, opinión disidente del Juez Frankfurter.

---

Opinión concurrente del JUEZ ASOCIADO SEÑOR ORTIZ.

Estoy conforme con la opinión de este Tribunal, pero creo conveniente el señalar algunos conceptos adicionales. A mi juicio, la opinión mayoritaria está justificada por las disposiciones específicas y claras de la Ley de Compensaciones por Accidentes del Trabajo, estatuto que debe gobernar exclusivamente esta situación.

En el caso de *Travieso* v. *del Toro*, 74 D.P.R. 1009, siendo ponente el infrascrito, decidimos en parte que bajo el art. 143 de nuestro Código Civil, el padre tiene derecho a alimentos y tiene a su favor una causa de acción por la muerte de su hijo, ya que, aun si él no recibía alimentos en forma real y efectiva al tiempo de la muerte de su hijo, él pierde los beneficios prospectivos y potenciales inherentes a la relación de padre e hijo, en vista de que la relación en sí daba lugar a una esperanza razonable de alimentos y beneficios futuros. Tal doctrina es válida y efectiva en el área de aplicación del Código Civil, que estructura el derecho a alimentos sobre la base de los vínculos jurídicos de parentesco, (1 Manresa 671, 6ta. ed.), que dan lugar a una obligación de alimentar. Manresa, pág. 685. Sin embargo, la Ley de Compensaciones por Accidentes del Trabajo es una especial, y los beneficiarios son aquéllos que reunan las condiciones de dependencia señaladas

taxativamente en ese estatuto. Schneider, *Workmen's Compensation*, vol. 9, pág. 2, ed. Permanente; *Brown* v. *Martin*, 26 S.E.2d 317. Aunque tal ley debe ser interpretada liberalmente a los fines de que sus beneficios no queden denegados a base de una interpretación estrecha, técnica o estricta, sin embargo, las palabras usadas en el estatuto deben ser consideradas a la luz de su significación legal ya establecida o la que sea compatible con la intención legislativa, no estando un tribunal justificado a interpretarlas en tal forma que se violenten los requisitos específicos de la ley. *Brown* v. *Martin*, supra.

El problema en discusión debe resolverse exclusivamente a base de la sec. 3 de la ley, según fué enmendada por la ley núm. 284, de 15 de mayo de 1945 (pág. 1037). Veamos.

El artículo en cuestión le concede derecho a compensación, entre otros, a un padre que "dependiera total o parcialmente para su subsistencia de lo que ganaba el obrero fallecido al tiempo de su muerte". Claramente, el derecho a compensación no se otorga sobre la base única de que el reclamante sea el padre, esto es, no surge meramente del vínculo de parentesco, como ocurre bajo el Código Civil, ni se hace depender tal derecho en un presunto derecho a alimentos. Se trata de una dependencia de hecho, y no de derecho, en vista de las siguientes consideraciones:

(1) La frase "que dependiera total o parcialmente" implica la necesidad de que exista una situación real de hecho, ya que las dos alternativas señaladas son dependencia total para su subsistencia, esto es, que la totalidad de los gastos necesarios para la subsistencia del padre eran suministrados por el hijo, y dependencia parcial para su subsistencia, esto es, que una parte de los gastos necesarios para la subsistencia eran realmente suministrados por el hijo. Un estado de dependencia parcial no surge de, ni se identifica con, un presunto derecho potencial e intangible a alimentos; cuyo derecho es íntegro y no puede ser fragmentado parcialmente.

(2) El depender una persona de otra para su subsistencia representa ser una realidad y no un estado de derecho. Es un hecho, y no una relación jurídica.

(3) "Que dependiera . . . para su subsistencia de lo que ganaba el obrero o empleado fallecido al tiempo de su muerte". La dependencia y la subsistencia se basan en unas sumas o cantidades concretas que el hijo ganaba, como cuestión de hecho, al tiempo de su muerte. O sea, se requiere que el padre haya subsistido, total o parcialmente, de lo que realmente ganaba el hijo al tiempo de su muerte. Si el hijo estaba incapacitado o en estado de invalidez, al tiempo de su muerte, hasta el punto de que, como cuestión de hecho, él no ganaba nada, no podría surgir la dependencia. No bastaría una esperanza de ganancias futuras. Si el hijo ganaba o no dinero es una cuestión de hecho. El estatuto no está predicado en potencialidades, ni en esperanzas, ni en vínculos jurídicos ni en derechos y obligaciones. El estatuto está saturado de exigencias de realidades. La paternidad es un requisito *sine qua non* pero obviamente no es el único requisito, ya que se requiere además que el padre, además de ser padre, dependa para su subsistencia de lo que ganaba el hijo. De haberse pretendido establecer el criterio contrario, el art. 3 de la ley se hubiera limitado a conceder el derecho a compensación a los padres, sin requisito ni calificación alguna. La tesis contraria a la opinión de este Tribunal está predicada en el concepto de que el hecho de ser padre es de por sí suficiente para que surja el derecho a compensación, ya que de tal paternidad surgiría una presunción de dependencia, basada esta última en un derecho potencial a alimentos. Si ello fuera así, el legislador se hubiera limitado a señalar la condición de padre. Tal tesis implica que la frase "que dependiera total o parcialmente para su subsistencia de lo que ganaba el obrero o empleado fallecido al tiempo de su muerte", es una frase inútil, académica y sin significación alguna, ya que la relación de padre e hijo sería suficiente para dar lugar al derecho a compensación.

Del art. 3 surge claramente que la condición de padre no es suficiente y que también se requiere la dependencia como cuestión de hecho. Sigue diciendo tal articulado que la compensación se distribuirá "entre los parientes mencionados atendiéndose a la condición, necesidades, *grado de parentesco y dependencia* de cada uno, según se decida por el Administrador *de acuerdo con los hechos*". (Bastardillas nuestras.) De ello surgen las siguientes consideraciones:

(1) El grado de parentesco no es el único factor envuelto. Específicamente se añade el requisito de dependencia al del grado de parentesco. O sea, el grado de parentesco, como vínculo jurídico que da lugar a derechos y obligaciones, no sirve de medida exclusiva de la dependencia. Se exige adicionalmente la dependencia, como factor distinto e independiente del grado de parentesco. El grado de parentesco es distinto a la dependencia como cuestión de hecho.

(2) Se indica que la distribución de la compensación es función, entre otros factores, del grado de parentesco y la dependencia, de acuerdo con los hechos. O sea, que la dependencia, entre otros factores, es una cuestión de hecho, ya que su extensión y alcance debe decidirse de acuerdo con los hechos.

Del art. 3 surge con claridad meridiana, a mi juicio, que la dependencia es una cuestión de hecho. Naturalmente, puede haber presunciones en cuanto a cuestiones de hechos. Pero la Comisión Industrial formuló una conclusión de hecho al efecto de que había dependencia de parte del padre. Ante la Comisión hubo un conflicto en la evidencia en cuanto a tal cuestión, y la Comisión resolvió ese conflicto y formuló una conclusión basada en evidencia ante ella presentada. Bien conocida es la regla al efecto de que las conclusiones sobre los hechos de la Comisión Industrial deben ser respetadas por este Tribunal si ellas tienen base en la prueba. Una presunción no debe ser suficiente para derrotar una conclusión sobre los hechos.