FERMÍN DÍAZ MAREZ, lesionado y recurrido, *v.* FONDO DEL SEGURO DEL ESTADO, asegurador y recurrente.

Número: O-84-690      Resuelto: 10 de enero de 1985

*María L. Colón Díaz,* abogada del recurrente; *Aurelio Saliva Mattei,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Este recurso tiene como trasfondo una tragedia humana.

De ordinario, intuitivamente los jueces nos solidarizamos con el dolor y nos esforzamos por aliviarlo. En esos casos, para lograr el ideal de justicia, atemperamos la rigurosidad de la ley. Lamentablemente ni el más amplio liberalismo, como tampoco paternalismo judicial, nos lo permiten aquí. Después de todo, toda sentencia es "valoración humana circunstancial". C. Rodríguez-Aguilera, *La sentencia*, Barcelona, Ed. Bosch, 1974, pág. 87.

## I

Fermín Díaz Marez sufrió un accidente laboral. El Fondo del Seguro del Estado le reconoció una incapacidad de veinticinco por ciento (25%) en sus funciones fisiológicas generales, cuya equivalencia económica ascendió a $5,062.

El 29 de octubre de 1981 su compañera por veinticinco (25) años, Sra. Arcadia Martínez, le ocasionó ilegalmente la muerte. La causa criminal por ese acto culminó en una alegación de culpabilidad por homicidio voluntario.

Ante el Fondo, a la fecha de su muerte le quedaba un balance pendiente de pago de $3,350. Así las cosas, la señora Martínez, como única dependiente de Díaz Marez, reclamó ese balance. El Fondo denegó esa reclamación "basándose en que el homicidio cometido por Doña Arcadia Martínez en la persona del obrero lesionado no puede conferirle los derechos que provee la Ley de Compensaciones por Accidentes del Trabajo a los dependientes de los trabajadores fallecidos". Concluyó que la Ley de Compensaciones no regula expresamente la situación de autos. Ante esa laguna aplicó por analogía los efectos privativos de derechos sucesorios de los Arts. 685(2) y 780(4) de nuestro Código Civil, 31 L.P.R.A. secs. 2261(2) y 2458(4), que respectivamente preven las causales de indignidad para heredar y las causales para desheredar.

Inconforme, la señora Martínez apeló. La Comisión Industrial revocó. A solicitud del Fondo, mediante trámite de mostrar causa, revisamos.

## II

En esencia, el Fondo argumenta que es erróneo dicho dictamen pues está basado en una acción delictiva contraria al orden y a la moral pública. No es posible, a su juicio, "reclamar como dependiente quien da muerte al trabajador accidentado y basa su reclamación en su propia torpeza moral".

Sostiene que la resolución recurrida "implica que la homicida del obrero se convierte, en virtud de su crimen, en dependiente de éste y acreedora a los beneficios que provee la Ley de Compensaciones por Accidentes del Trabajo. . . . Este resultado es contrario a las más elementales nociones de moral pública que rigen la vida en sociedad". Finalmente expone que "las personas o sus causahabientes que acuden al Estado a reclamar beneficios fundados en sus actuaciones culpables carecen de derecho a reclamar".

Por su parte, la Comisión(¹) se hizo eco de la tesis de la

---

(1) A tal efecto, en su resolución en reconsideración expresó lo siguiente:

"Primero, el Asegurador no cuestiona, y en ese sentido estamos de acuerdo, que la reclamante cualifica como dependiente del occiso. *Cepeda* v. [*Comisión Industrial*], 76 D.P.R. 801 (1954); *Alonso* [*García* v. *Comisión Industrial*], 102 D.P.R. [752] (1974); *Fraticelli* v. [*Comisión Industrial*], 105 [D.P.R.] 363 (1976).

"Segundo, como bien señala el Asegurador en su moción, la Ley de Compensaciones por Accidentes del Trabajo 'no regula expresamente la situación de autos'.

"Tercero, asumiendo *pro argüendo* que se pudiera aplicar por analogía las defensas del Artículo 4 de la Ley, el peso de la prueba descansa sobre el Asegurador y la evidencia debe ser clara e inequívoca y de tal grado que establezca la defensa *más allá de toda duda razonable. Umpierre* v. [*Comisión Industrial*], 52 D.P.R. 765 (1938). Además, como toda defensa, el Asegurador debió levantarla en el primer momento; al dictar su decisión durante el curso de la vista pública. Al no hacerlo, renunció a la misma. *Montaner* [, *Admor.* v. *Comisión Industrial*], 56 D.P.R. 286 (1940).

"En el caso de autos, el Asegurador no hizo ni lo uno ni lo otro. En la vista pública celebrada, éste no desfiló prueba alguna para sustentar su posición. Tuvo oportunidad de interrogar a la reclamante y no lo hizo. Por ello se le garantizó el debido procedimiento de Ley. Artículo II, Sección 7, Const. ELA, *F.S.E.* v. [*Comisión Industrial*], 105 D.P.R. 261 (1976); *Meléndez* [*Santana* v. *Comisión Industrial*], 109 D.P.R. 393 (1980). Su renuncia es patente. *Morales* [*Narváez* v. *Gobernador*], 112 D.P.R. 761 (1982)."

señora Martínez en el sentido de que la ley permite el pago ante el fallecimiento de un obrero o empleado *"por cualquier causa independiente a la lesión recibida en el accidente,* por la cual se hubiere reconocido o esté pendiente de reconocerse una incapacidad parcial permanente . . .".* Específicamente alega que el estatuto dispone dicho pago "[d]el balance no pagado de cualquier compensación correspondiente a dicha incapacidad parcial permanente perteneciente o que se adeude al obrero o empleado lesionado al tiempo de su muerte, a aquellos que dependieran para su subsistencia del obrero o empleado fallecido, en cuyos derechos quedan expresamente subrogados". 11 L.P.R.A. sec. 3, inciso 4 (b).

### III

Erró la Comisión Industrial.

Desde el primer momento, el Fondo fundamentó su decisión en el acto criminoso y la muerte ilegal que la señora Martínez dio al obrero Fermín Díaz. Ese hecho no fue ni ha sido controvertido. Por el contrario, ella lo aceptó en su memorándum de derecho a la Comisión Industrial. ([2])

Como hecho no contradicho y aceptado, la Comisión no podía ignorarlo aduciendo que en la vista en apelación el Fondo no había desfilado prueba al efecto. Como cuestión de realidad el Fondo basó su negativa original en dicho proceder.

En cuanto a las consecuencias del homicidio, las disposiciones del Código Civil antes mencionado sobre causas de indignidad y desheredación más bien sirven, por vía de equivalencia conceptual, para la exposición de principios elementales en nuestro régimen de derecho. A nadie le es lícito bene-

---

([2])En dicho escrito ella admitió que "surge de la prueba que la reclamante-apelante fue acusada e hizo declaración de culpabilidad por delito de homicidio voluntario resultando así responsabilizada penalmente por la misma. Esto implica como en efecto ocurrió, que dicha muerte se produjo con motivo de súbita pendencia y arrebato de cólera, quedando por tanto excluidos los elementos de premeditación y alevosía".

ficiarse por acciones criminales que atentan contra la dignidad de la persona y el interés público. Entre los seres humanos la ingratitud no es bien vista. Igual ante los ojos de la ley. (³)

■ Aclarados estos extremos percibimos que la Comisión Industrial se ha adherido rigurosamente al lenguaje del estatuto desarticulando el espíritu reparador que lo impregna y el sitial que en su diseño ocupa todo obrero lesionado. Es éste su principal usufructuario. Sostener que un homicida de un obrero porque sea su dependiente es acreedor al balance no pagado de una compensación correspondiente a una incapacidad parcial permanente, a base de que el texto habla de "cualquier causa independiente a la lesión recibida en el accidente", atenta contra el espíritu de la ley y los principios básicos de orden público. Es un contrasentido. Debemos recordar que las "relaciones abstractas sobre las que la ley labora y teje su urdimbre ordenadora, constituyen cánones de partida, esquemas estructurales sobre los que ha de actuar la pericia y el buen sentido del Magistrado, siempre alerta a la pluralidad de los intereses y las pasiones que la cantera de la viva realidad arrastra y renueva de modo incesante. Como sintetiza Cesarini Sforza, el legislador crea modelos abstractos, pero la vida, con la que los jueces entran directamente en contacto, sólo está hecha de casos concretos". F. Soto Nieto, *Compromiso de Justicia*, Madrid, Ed. Montecorvo, 1977, pág. 100.

Desde esta perspectiva, la Ley de Compensaciones en su Art. 4 nos brinda la clave de lo que debe regir una situación como la de autos. El legislador ha establecido diáfanamente

---

(³) La equivalencia conceptual y moral antes referida no es incompatible con nuestra doctrina jurisprudencial de que la ley de compensaciones que nos ocupa es de dependencia y no de herencia. Véanse: *Fraticelli* v. *Comisión Industrial*, 105 D.P.R. 363, 366 (1976); *El Día, Inc.* v. *Tribunal Superior*, 104 D.P.R. 149 (1975); *Gallart Mendía* v. *González Marrero*, 95 D.P.R. 201, 206 (1967); *Alonso García* v. *Comisión Industrial*, 102 D.P.R. 752, 753 (1974); *Cepeda* v. *Comisión Industrial*, 76 D.P.R. 801, 806 (1954); *Tomás* v. *Comisión Industrial*, 59 D.P.R. 860 (1942); *Rodríguez* v. *Comisión Industrial*, 58 D.P.R. 111, 114 (1941); *De Jesús* v. *Osorio*, 65 D.P.R. 640, 643 (1946).

que un obrero que se lesiona cometiendo un delito no tiene derecho a reclamar los beneficios de un accidente de trabajo. 11 L.P.R.A. sec. 5. Preguntamos, ¿cómo es posible que si la ley priva de sus beneficios al obrero delincuente pueda extenderlos a quien le causa la muerte? La interpretación de la Comisión Industrial es una tergiversación del estatuto reparador que no estamos dispuestos a aceptar. Va contra el sentido común y la moral pública. *Ramos Oppenheimer* v. *Leduc*, 103 D.P.R. 342, 344 (1975). "Hay que evitar a toda costa que se produzca un divorcio entre el Derecho proclamado por los Jueces y la conciencia popular; ante tales vacíos o desajustes puede fracturarse gravemente el orden social." Soto Nieto, *op. cit.*, pág. 99.

Por los fundamentos expuestos *se expedirá el auto y se dictará sentencia en que se revoque la resolución de la Comisión Industrial.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué concurren en el resultado sin opinión.