# 96 DTA 129

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VII - CAROLINA Y FAJARDO

MIGUEL DELGADO OREÑA Y OTROS
Demandantes-Recurrentes

v.

WILLIAMS HOSPITALITY GROUP Y OTROS
Demandados-Recurridos

Núm. KLAN-96-00718

San Juan, Puerto Rico, a 30 de septiembre de 1996

Panel integrado por su presidente, Juez Arbona Lago
y los Jueces Negroni Cintrón y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Miguel Delgado Oreña, su esposa, Gladys Delgado y la sociedad legal de gananciales por ellos compuesta, (en adelante Delgado Oreña) solicita la revisión de una sentencia parcial dictada el 3 de junio de 1996, notificada el 20 de junio de 1996. Dicha sentencia declaró con lugar una solicitud de sentencia sumaria radicada por la demandada y apelada, Williams Hospitality Group (en adelante Hospitality Group) operadora del Casino del Hotel San Juan, (el Casino) desestimando dos de las tres reclamaciones de Delgado Oreña, específicamente el recobrar un 10% de las sumas perdidas por él en el casino y el derecho a recobrar por daños por su expulsión del mencionado casino.

### I

Conforme a los documentos ante nos, el apelante era un asiduo jugador del casino. En enero de 1995, Delgado Oreña solicitó un crédito por $6,000.00 para poder jugar, el cual le fue concedido tras firmar un recibo o *"marca"*. Debido a ciertos problemas que surgieron como consecuencia de la desaparición de dicho recibo, el apelante se reunió con varios oficiales del casino, aclarando la situación en cuanto al recibo y solicitando además que se le concediera el beneficio de que se le devolviera un 10% ▮ de las pérdidas que había tenido en el casino durante ese año, las cuales estimaba en unos $400,000, además de las pérdidas de años anteriores.

Posteriormente, el 20 de enero de 1995 el apelante presentó una declaración jurada a la administración del Casino en la que acreditaba ser un jugador compulsivo y en la que advertía que no se le debía dar más crédito a partir del 25 de enero de 1995. Por ser el documento fulcro para la resolución del caso ante nos, se transcribe dicha declaración jurada en su parte pertinente.

*"... 3) Que debido a mi condición compulsiva, una vez estoy en el lugar de juegos pierdo la voluntad y la compulsión me obliga y arrastra a jugar en forma tal que estoy comprometiendo mi futuro económico y el de mi familia.*

*4) Que en los lugares que frecuento tengo establecido crédito que uso en ocasiones hasta límites que amenazan mi seguridad financiera.*

*5) Que estoy consciente de que en estado tranquilo, normal y fuera de juego, mi mente es clara y responsable; sin embargo el juego hace que mi entendimiento se nuble y me induce a sobrepasar los límites razonables de la diversión.*

*6) Que hoy, al realizar esta expresión unilateral de voluntad para ser entregada a las administraciones de los casinos que frecuento, mi mente está clara, consciente y hago la presente en pleno uso de mi intelecto.*

*7) Que esta expresión unilateral va dirigida a los administradores de los casinos de los citados*

*hoteles y les advierte a ellos que desde y a partir del próximo día 25 de enero de 1995, mi crédito con ellos sea cerrado y abolido y que, de ellos concederme en alguna futura ocasión cualquier tipo de crédito estarán incurriendo en dolo y engaño en mi contra porque saben a partir del recibo de la presente que cuando me otorgaron o me otorguen crédito será no estando yo en el uso de mi voluntad ni inteligencia y por tanto habrá vicio de consentimiento de otorgárseme crédito alguno.*

*8) Las administraciones de dichos Hoteles y sus casinos, los cuales reciben esta expresión escrita incurrirán en daños en mi contra si ha pesar de estas circunstancias persisten en concederme crédito para jugar en sus mesas.*

*9) El presente documento tiene copias que han sido firmados como recibidos por representantes de dichos hoteles con autoridad para impl [sic] y controlar el crédito que se otorgue a los clientes en sus casinos.*

*10) Que lo anterior es verdad y solamente la verdad y así lo manifiestó para el propósito y fin antes indicado...."*

Esta declaración jurada fue notificada al personal del casino y se impartieron instrucciones entre el personal del casino con el propósito de que no se autorizara crédito ni se le permitiera jugar al demandante.

Así las cosas, el 10 de febrero de 1995 los esposos apelantes acudieron al Casino, infomándole el gerente de mesas. Le informó además al apelante que debía abandonar el local pues había sido declarado persona *"non grata"* de éste. Todo esto sucedió en presencia de un grupo de amistades de los apelantes y de un grupo de parroquianos que ocupaban el local. Alegadamente se comenzó a comentar que la causa de la expulsión se debió a que el apelante estaba en contubernio con un empleado del casino para recibir fichas a crédito sin que la operación se registrara.

El 28 de julio de 1995, Delgado Oreña presentó demanda reclamando el pago del beneficio del 10% de las sumas perdidas en los juegos del casino, por los daños y perjuicios sufridos como consecuencia de la expulsión del casino y por difamación. Luego de varios trámites procesales, Hospitality Group solicitó se concediera sentencia sumaria a su favor alegando básicamente que no existía controvesia real sustancial en cuanto a ningún hecho material a la causa de acción y que Delgado Oreña estaba impedido por sus propios actos de alegar que ellos habían actuado sin justificación al no permitirle jugar. Alegaron además entre otras cosas, que no procedía la devolución del 10% de pérdidas reclamados puesto que esto era un privilegio y no un derecho sobre el cual existía una obligación. El Tribunal de Instancia, Sala Superior de Carolina, Hon. C. Heydee Pagani Padró, Jueza, acogió estos planteamientos desestimando las reclamaciones de la demandante-apelante, con excepción a lo referente a la reclamación por difamación. Es de dicha sentencia sumaria parcial que la parte apelante recurre señalando la comisión de dos errores, al desestimarse sumariamente dos de sus causas de acción existiendo una controversia real sobre los hechos.

El apelante argumenta que existe un reconocimiento de que el privilegio de la devolución del 10% de pérdidas le había sido concedido ▉ por lo que tiene derecho a reclamarlo. Indica además que existe controversia sobre el verdadero sentido y propósito de su declaración jurada. Los apelados comparecieron el 3 de septiembre de 1996 alegando que la decisión de no permitir jugar a Delgado Oreña se fundamentó en lo que surgía de su propia declaración jurada y que la práctica de conceder el beneficio de un porcentaje de las pérdidas no constituia ningún tipo de obligación exigible. Revisada la posición de ambas partes, resolvemos confirmar la sentencia sumaria parcial apelada.

## II

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. II, autoriza dictar sentencia sin necesidad de celebrar una vista en los méritos en aquellos casos en que no exista una genuina controversia de los hechos. *Nassar Rizek v. Salvador Hernández,* 123 D.P.R. 360 (1989); *Camaleglo Corp. v. Dorado Wings, Inc.,* 118 D.P.R. 20 (1986). En el proceso de determinar si dicha regla es el vehículo apropiado para disponer total o parcialmente de una demanda, nuestro más alto foro ha expresado que el sabio discernimiento es el principio rector para su uso, por lo que el tribunal debe cerciorarse de la total inexistencia de controversias de hechos y que el residuo sea la aplicación del derecho. *Consejo de*

*Titulares del Condominio Parkside v. M.G.I.C. Financial Corp.*, 129 D.P.R. ___ (1991), **91 J.T.S. 54**; *Roig Commercial Bank v. Rosario Cirino*, 126 D.P.R. ___ (1990), **90 J.T.S. 106**.

El tribunal, al considerar una moción de sentencia sumaria, analizará los hechos de la forma más favorable a la parte que se opone y dictará sentencia según proceda en derecho. *Colegio de Ing. y Agrimensores de Puerto Rico v. A.A.A. de Puerto Rico,* 132 D.P.R. ___ (1992), **92 J.T.S. 137**. Si no existe controversia real de hecho, la parte promovida no puede descansar meramente en aseveraciones generales contenidas en las alegaciones, sino que debe demostrar que tiene prueba para substanciar sus alegaciones. *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714 (1986); *Flores v. Municipio de Caguas*, 114 D.P.R. 521 (1983).

En el caso ante nos no existe controversia en cuanto a que el apelante hizo una declaración jurada en la que advirtió, entre otras cosas, al Casino de que era un jugador compulsivo y que perdía su voluntad y control una vez estaba en el lugar de juegos. Señala, además, que no se le deberá conceder crédito so pena de que dicha actuación sea una dolosa. Cuando la Administración del Casino dio instrucciones para que no se le permitiera jugar, lo hizo conforme a lo que razonablemente se desprendía de la totalidad de dicha declaración, ya que la condición de jugador compulsivo no se debía a que se le extendiera crédito, y sí a su estado anímico cuando estaba en una sala de juegos.

La declaración unilateral de voluntad hecha por el apelante de manera expresa y voluntaria, razonablemente indujo al Casino a actuar de la manera en que lo hizo. Tomando la totalidad de la declaración, el casino quiso evitar el riesgo de una acción judicial que conllevaba dejarle jugar en sus facilidades. De un análisis riguroso de la totalidad de la declaración judicial anteriormente descrita, podemos colegir que dicha declaración advertía al Casino del efecto (se le nubla el entendimiento), que tenía sobre el apelante el juego.

En nuestra jurisdicción se ha reconocido una modalidad de las declaraciones unilaterales de voluntad, la doctrina de actos propios. Esta doctrina es de aplicación en aquellos casos en que exista una conducta determinada de un sujeto que haya engendrado una situación contraria a la realidad que haya influenciado en la conducta de los demás. Como tercer requisito para aplicar esa doctrina deben haber terceros que confiando en dicha apariencia hayan procedido de que le causaría perjuicios si su confianza quedara defraudada. *Meléndez Piñero v. Levitt & Sons of P.R.*, 130 D.P.R. (1991), **91 J.T.S. 95;** *Berríos v. U.P.R.*, 116 D.P.R. 88 (1985); *Díaz Marez v. F.S.E.,* 116 D.P.R. 50 (1985); *Velilla v. Pueblo Supermarkets Inc.,* 111 D.P.R. 585 (1981); *Int. General Electric v. Concrete Builders,* 104 D.P.R. 871 (1976); *Lausell Marxuach v. Díaz de Yañez*, 103 D.P.R. 533 (1975).

En el caso ante nos, fue la conducta exhibida a través de la declaración unilateral de voluntad la que generó en la administración del Casino la decisión de no admitirlo en el local. Al recibo de una declaración jurada así, el Casino hizo lo que una persona lógica y responsablemente podría considerar que tenía que hacer, y optó por vedarle la entrada al señor Delgado Oreña al lugar en que se le nubla su entendimiento y atenta contra su bienestar emocional y económico. No entendemos como el ejercicio responsable de la discreción del casino, al impedirle la entrada al señor Delgado Oreña, pueda dar fundamento y margen para la concesión de daños al que como él, expone y clama que sufre de la condición de jugador empedernido y suplica se le proteja y no se le conceda crédito. Precisamente, la Sección 15, Ley 85 de 23 de junio de 1956, 10 L.P.R.A. 723, le provee el instrumento legal a los operadores de casino para casos como el actual al disponer:

*"Nada de lo que se dispone en este Capítulo se interpretará como indicativo de que un salón de juegos o casino administrado en unión a un hotel, por un hostelero, o por cualquier otra persona, podrá ser considerado como un sitio donde se prestan servicios; o de negar a dicho hostelero u otra persona dirigiendo tal casino o sala de juegos el derecho, a su discreción de rehusar la entrada al mismo de cualquier persona; o el derecho, a su discreción, de despedir, o hacer despedir a cualquier persona de dicho salón de juegos; disponiéndose, sin embargo, que a ninguna persona se le negará la entrada a una sala de juegos, o será despedida de la misma por ninguna razón de color, ni por ningún otro motivo que no se aplique al público en general."*

## III

Delgado Oreña también señala que no procede desestimar la acción en cuanto a la devolución del

beneficio del 10% de lo perdido en apuestas; sin embargo de los documentos ante nos, no hay nada que indique la existencia de algún tipo de obligación exigible entre Hospitality Group y el apelante para que se concediera dicho privilegio.

La existencia de una obligación es una cuestión de hecho, cuya carga de prueba corresponde demostrar a quien las alega. 31 L.P.R.A. 3261. El Artículo 1042 del Código Civil establece como fuente de las obligaciones: la ley, los contratos, los cuasicontratos y los actos u omisiones ilícitas o en que intervenga cualquier género de culpa o negligencia, 31 L.P.R.A. 2992. En el caso ante nos, no se demostró la existencia de ninguna de estas fuentes. ■

El hecho de que exista una práctica y costumbre de adjudicar discrecionalmente por cortesía el beneficio o privilegio de la devolución de un porcentaje de las pérdidas a ciertos clientes, en nada abona a una obligación legal y jurídica de hacerlo en favor del demandante-recurrente, puesto que de existir la práctica, la misma es una de cortesía discrecional del Casino.

Por los fundamentos anteriormente expuestos confirmamos la sentencia sumaria parcial recurrida.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 96 DTA 129**

**1.** Alegadamente la Administración de este casino tiene la práctica de conceder discrecionalmente a una cantidad limitada de clientes el privilegio de devolverle un porcentaje del total de pérdidas en apuestas en los juegos de azar.

**2.** El apelante sostiene que en la conversación mantenida con los gerenciales del Casino para aclarar lo de la marca le dijeron que era beneficiario de dicho privilegio, además de que existe un documento en el que su nombre aparece junto al de otras personas como beneficarios de dicha devolución.

**3.** Tanto es así que la propia ley en el Art. 1698 del Código Civil, 31 L.P.R.A. 4771, indica:

*"La ley no concede acción para reclamar lo que se gane en un juego de suerte, envite o azar; pero el que pierde no puede repetir lo que haya pagado voluntariamente, a no ser que hubiese mediado dolo, o que fuera menor o estuviera inhabilitado para administrar sus bienes",* 31 L.P.R.A. 4771.